ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS A. PEREZ, Petitioner : No. 1:CV-00-1960

v. : (Judge Kane)

JOHN ASHCROFT,[1] Respondent :

FILED HARRISBURG, PA MAR 26 2001 MARY E. D'ANDREA, CLERK Per Deputy Clerk

RESPONSE TO HABEAS CORPUS PETITION

This is a habeas petition brought under 28 U.S.C. §2241 by Carlos A. Perez, a citizen of Columbia. Perez has been charged by the INS as being removable for having committed an aggravated felony (money laundering), which Perez has conceded. Perez's only claim, which is on appeal to the Board of Immigration Appeals ("BIA") is whether he should be deported to Columbia or to another country under the Convention Against Torture ("CAT"). Pending a decision by the BIA, which should occur any day, Perez is being detained as required by law, 8 U.S.C. §1226(c).

Perez challenges his detention pending the BIA's decision as being unconstitutional. In that deportation is a plenary power exercised by Congress and the executive branch, detention is part of the deportation process, detention rationally furthers a number of legitimate government interests, and an alien's detention during removal proceedings is not indefinite, the INS maintains that the

[1] at the time Perez filed his habeas petition, Perez named then-Attorney General Janet Reno as respondent. Pursuant to Fed. R. Civ. P. 25(d)(1), the current Attorney General, John Ashcroft, has been substituted for Janet Reno.

mandatory detention provisions of 8 U.S.C. §1226(c) governing criminal aliens is constitutional.

**Statement of the Case**

Petitioner is a citizen of Columbia who had previously entered the United States as an immigrant. In 1992, Perez was indicted in the United States District Court for the Northern District of California. In 1997, Perez was convicted of a felony, conspiracy to launder money, and was sentenced to 60 months imprisonment. Exhs. 1-2.

In October 1999, the INS initiated removal proceedings against Perez, charging him with being removable for having been convicted of an aggravated felony. Exh. 2; Exh. 3, at 2.

In May 2000, Perez admitted to the factual allegations, with the immigration judge concluding that the money laundering offense constituted an aggravated felony and made Perez removable. Exh. 3, at 2-3. Pursuant to 8 U.S.C. §208.13, Perez sought deferral of removal to Columbia under the CAT, claiming that he would be tortured if removed to Columbia. Id., at 3-5.

On August 2, 2000, the immigration judge denied Perez's CAT claim, concluding that Perez had "in no way" demonstrated that he likely would be tortured by Columbia officials. Indeed, the immigration judge concluded that Perez was as likely, if not more likely, to be injured if he stayed in the United States due to his various criminal activities. Exh. 3, at 6-9.

Perez has appealed this decision to the BIA with a decision expected any day. In the interim, the INS is detaining Perez pursuant to Congress' direction that criminal aliens be detained pending removal proceedings. 8 U.S.C. §1226(c).

## Question Presented

In that deportation is a plenary power exercised by Congress and the executive branch, the Supreme Court has held that detention is part of the deportation process, detention of aliens rationally furthers a number of legitimate government interests, and an alien's detention during removal proceedings is not indefinite, is the mandatory detention provisions of 8 U.S.C. §1226(c) governing criminal aliens constitutional?

## Argument

**IN THAT DEPORTATION IS A PLENARY POWER EXERCISED BY CONGRESS AND THE EXECUTIVE BRANCH, THE SUPREME COURT HAS HELD THAT DETENTION IS PART OF THE DEPORTATION PROCESS, DETENTION OF ALIENS RATIONALLY FURTHERS A NUMBER OF LEGITIMATE GOVERNMENT INTERESTS, AND AN ALIEN'S DETENTION DURING REMOVAL PROCEEDINGS IS NOT INDEFINITE, THE MANDATORY DETENTION PROVISIONS OF 8 U.S.C. §1226(C) GOVERNING CRIMINAL ALIENS ARE CONSTITUTIONAL.**

The Seventh Circuit in Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999), is the only appellate court to consider the constitutionality of mandatory detention pending proceedings for criminal aliens under section 236(c) of the INA, 8 U.S.C. §1226(c). In reviewing the governing law, the Seventh Circuit upheld the constitutionality of §1226(c), observing that an alien in the United States who had violated our country's criminal laws had "forfeited any legal entitlement to remain in the United States and had little hope of clemency." 172 F.3d at 958. See also

Richardson v. Reno, 162 F.3d 1338, 1364 n.119 (11th Cir. 1998), *vacated on other grounds*, 119 S. Ct. 2016 (1999)("Congress acts well within its plenary power in mandating detention of a criminal alien with an aggravated felony conviction facing removal proceedings, ... [with this posing] no constitutional issue").

The Third Circuit Court of Appeals has not addressed the issue yet. However, district courts in the Middle District of Pennsylvania and elsewhere in the United States have issued rulings disagreeing on the constitutionality of mandatory detention during the removal process. Compare Lezcano v. Reno, 2000 WL 1175564 (N.D. Ca. Aug. 4, 2000)(attached)(upholding constitutionality of §1226(c); Kahn v. Perryman, 2000 WL 1053962 (N.D. Ill. July 31, 2000)(attached); Avramenkov v. INS, 99 F.Supp.2d 210, 215-19 (D.Conn. 2000); Okeke v. Pasquarell, 80 F.Supp.2d 635, 637-38 (W.D. Tex. Jan. 11, 1999); Reyes v. Underdown, 73 F.Supp.2d 653, 657-58 (W.D. La. Nov. 3, 1999); Sierra-Tapia v. Reno, 1999 WL 803898 (S.D. Cal. Sept. 30, 1999)(attached); Alikhani v. Fasano, 70 F.Supp.2d 1124 (S.D. Cal. July 19, 1999); Hinojosa-Perez v. Eddy, 55 F.SUPP.2d 1001 (D. Alaska 1999); Edwards v. Blackman, 48 F.Supp.2d 477, 480 (M.D. Pa. 1999)(McClure, J.), *vacated on other grounds*; Galvez v. Lewis, 56 F. Supp.2d 637 (E.D. Va. 1999); Diaz-Zaldierna v. Fasano, 43 F. Supp. 2d 1114 (S.D. Cal. 1999) with Koita v. Reno, 113 F.SUPP.2d 737 (M.D.Pa. 2000)(Caldwell, J.); Chukwuezi v. Reno, 2000 WL 1372883 (May 16, 2000 M.D.Pa.)(Vanaskie, C.J.)(attached).

As explained below, the better holding is that the provisions of 8 U.S.C. §1226(c), clearly are constitutional and fall well within Congress' plenary powers in governing immigration.

**A. The Purpose of Mandatory Detention**

Mandatory detention cannot be viewed in a vacuum. Rather, detaining criminal aliens is part of a removal process, not an end result. Section 1226(c) is but one of several pieces of legislation collectively designed to accelerate the removal process for criminal aliens.

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) to establish a framework to effect a net increase in removal orders entered against criminal aliens. Through IIRIRA's provisions, Congress not only mandated the detention of criminals pending removal proceedings, but also took away the Attorney General's discretionary authority to forgo the removal of aggravated felons, eliminated judicial review, and set a 90-day time limit by way of instruction to INS for physical removal after a final order is entered. See 8 U.S.C. §§1101(f)(3) and (8), 1158(b)(2)(B), 1226(c) and (e), 1229b(a)(3), (b)(1)(B), (C), (2)(C), (D), 1229c(a)(1), 1231(a), (b)(1)(A), (C), 1231(a)(2), 1252(a)(2)(C).

In enacting these provisions, Congress implicitly recognized that the curtailment of individual liberty interests was necessary to effect a net increase in removal orders against

criminal aliens. That is, while the IIRIRA demands the detention of all criminal aliens from start to finish of the administrative removal process without an individual assessment on dangerousness and flight risk, it does so based on the theory that such limitation is necessary to ensure a more effective and credible removal process generally. See H.R. Rep. No. 104-469(I) (1996), available in 1996 WL 168955; 142 Cong. Rec. S3329, 1996 WL 174902 (daily ed. Apr. 15, 1996)(statement of Sen. Abraham)("These provisions collectively will allow us to dramatically increase the number of criminal aliens who are deported.")(emphasis added).

**B. The Plenary Power Doctrine for All Immigration Matters**

The principle of judicial deference to legislative choices is magnified in the immigration context. See Fiallo v. Bell, 430 U.S. 787, 792 (1977). Fiallo's deferential approach to questions of immigration and nationality is tied to Congress' constitutional authority and inherent sovereign powers. Because the responsibility for formulating immigration policies is "exclusively entrusted to the political branches of government," such policy choices are "largely immune from judicial inquiry or interference." Harisiades v. Shaughnessy, 342 U.S. 580, 588-589 (1952).

This basis for judicial caution applies with equal force in the immigration detention context. **The power to detain is part and parcel of the power to remove; otherwise, "[p]roceedings to**

**exclude or expel would be vain."** Wong Wing v. United States, 163 U.S. 228, 234 (1896). See also Carlson v. Landon, 342 U.S. 524, 538 (1952)("Detention is necessarily a part of this deportation procedure. Otherwise, aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings.").

Without doubt, it is decidedly the province of the legislature to weigh and balance the costs of the immigration detention policy with the enforcement interests and the alien's liberty interests. The plenary power doctrine constrains judicial inquiry into Congress' balancing of individual and government interests, and the courts must accord great deference to Congress' determination of what process is due. See Weiss v. United States, 510 U.S. 163, 176-77 (1994).

This is a critical aspect of the plenary power doctrine. The courts should not revisit the wisdom of either Congress' desire to effect a systemic change, or to curtail the liberty interests of criminal aliens pending proceedings. The very fact that Congress enacted the statute demonstrates that it concluded that other policy concerns outweighed those concerns articulated by the critics.

The INS does not dispute that §1226(c) is subject to some level of substantive due process review.[2] See Fiallo v. Bell, 430 U.S. 787, 793 n.5 (1977). Because of the "plenary powers" doctrine, however, the proper standard of review here is a deferential rational-relation standard, under which §1226(c) is constitutional so long as it is "rationally" related to a "legitimate" government interest. See Reno, 507 U.S. at 300-01, 306; Carlson v. Landon, 342 U.S. 524, 540-41 (1952)(upholding INS detention that was not clearly "without reasonable foundation").

**C. The Individual's Right To Liberty**

The characterization of the liberty interest at stake is another important aspect of the detention litigation. Courts are required to adhere to the prudent course of looking to the concrete facts of a case to determine what right is at issue. See Washington v. Glucksberg, 521 U.S. 702, 722-24 (1997).

Moreover, we emphasize that an individual's rights to liberty pending criminal trial and pending removal proceedings are **not** comparable. "A person arrested on a preliminary warrant [of

---

[2] In §1226(c) cases, the administrative agency has the jurisdiction, pursuant to 8 C.F.R. §3.19(h)(2)(ii), to determine whether the alien in custody actually falls within a category of criminal aliens subject to interlocutory detention pending removal proceedings. See Matter of Joseph, Int. Dec. 3398, 1999 WL 339053 (BIA 1999). If the alien does fall within the interlocutory detention provision, then there is no authority to entertain a request for release on bond (unless the alien is eligible for Witness Protection Program benefits). Id.

deportation] is not protected by the presumption of citizenship comparable to the presumption of innocence in a criminal case." INS v. Lopez-Mendoza, 468 U.S. 1032, 1043 (1984). The absence of a presumption of innocence affects the constitutionality of immigration detention because the motivating concern for limiting the length of pretrial detention in a criminal case is that presumption of innocence.

Aliens (and courts) often confuse the question of what process is due with the question of whether a protectable liberty interest exists. The interest of the alien at stake in §1226(c) cases is a non-fundamental interest in being released pending proceedings, not in an individualized hearing on the question of whether he will be released. As the Second, Fifth, and Seventh Circuit Courts have recognized, a deportable alien does not possess the same "liberty" as a citizen. See Zadvydas v. Underdown, 185 F.3d 279, 289 5th Cir. 1999), *cert. granted*, 121 S.Ct. 279 (Oct. 10, 2000);[3] Parra, 172 F.3d at 958; Doherty v. Thornburgh, 943 F.2d 204, 209-10 (2nd Cir. 1991). In a certain sense, deportable criminal aliens in removal proceedings possess no "right to come and go at will." See Flores, 507 U.S. at 302. The reason is two-

[3] As just noted, the Supreme Court has granted certioari in Zadvydas, with a decision addressing the scope of Congress' detention powers to be released within the next two months. Although this case addresses post-order of removal detention cases, its holding is likely to be quite relevant in the pre-order of removal detention cases.

fold: (1) release on bond has always been a privilege and never a matter of right or entitlement and (2) aliens are subject to the will of Congress when it comes to matters associated with their continued presence within our society. <u>See</u> <u>Flores</u>, 507 U.S. at 305-06; <u>Harisiades</u>, 342 U.S. at 586-87.

Consequently, although a criminal alien's physical freedom is being infringed temporarily during his removal proceedings, he has not been unlawfully deprived of any "fundamental liberty interest" in the constitutional sense. <u>See</u> <u>Parra</u>, 172 F.3d at 958; <u>see also</u> <u>Flores</u>, 507 U.S. at 306, <u>Carlson</u>, 342 U.S. at 537, 540-41; <u>Doherty</u>, 943 F.2d at 208-11. As the Seventh Circuit explained, the private interest implicated by §1226(c)'s detention requirement "is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." <u>Parra</u>, 172 F.3d at 958. Because §1226(c) does not implicate a fundamental right, the scope of review is rational basis review. <u>See</u> <u>Flores</u>, 507 U.S. at 306.

**D. <u>Section 1226(c) is Constitutional</u>**

Section 1226(c) is a reasonable exercise of congressional power as it clearly furthers a legitimate governmental purpose. The legislative history reveals that there were several legitimate purposes underlying §1226(c): (1) to prevent criminal aliens from absconding so they could be removed as required by law; (2) to protect public safety from the presence of potentially dangerous

criminal aliens; (3) to correct the failure of prior bond proceedings where criminal aliens absconded, and (4) to repair the serious damage to the American immigration system caused by the Government's inability to detain criminal aliens pending deportation and to remove them promptly. See S. Rep. No. 48, 104th Cong., 1st Sess. (1995)(1995 WL 170285)(Leg. Hist.) at 1-6, 9, 18-23).

The statute seeks to prevent clearly deportable criminal aliens with no realistic hope of relief from removal from absconding or committing further criminal acts during proceedings to effect their removal.[4] Preventing danger to the community and flight have long been considered legitimate regulatory goals. See, e.g., Salerno, 481 U.S. at 748-49; Schall v. Martin, 467 U.S. 253, 251 (1984); Bell v. Wolfish, 441 U.S. 520 (1979); Carlson, 342 U.S. at 534. These goals have been paramount among the immigration enforcement concerns of Congress and the Attorney General over the past decade, with mounting emphasis in the past three years as the problems of widespread recidivism and abscondment have come increasingly to light.

---

[4] Under the Immigration and Naturalization Act, as amended by AEDPA and then IIRIRA, criminal aliens like petitioner - convicted of an aggravated felony (money laundering) - must be removed from the United States. Such aliens have no right to discretionary relief from deportation. Avrammenkov v. Immigration and Naturalization Service, 99 F.Supp.2d at 211-12. Thus, particularly as in petitioner's case, the alien has no hope in remaining in the United States.

A 1995 report of the Senate Governmental Affairs Committee observed that "[i]n New York, for example, in fiscal year 1993, out of 1695 [orders to surrender for deportation] sent to criminal and non-criminal aliens, 1486, or 87.7 percent failed to surrender. Also, in New York, there were $2.4 million in bonds breached in fiscal year 1993."). S. Rep. No. 104-48, 1995 WL 170285 (Apr. 7, 1995)(emphasis added); see also id. ("Through 1992, nearly 11,000 criminal aliens convicted of aggravated felonies (which are particularly serious crimes) failed to appear for deportation hearings. . . .")(emphasis added).

There can be no question that removing deportable criminal aliens from the United States, and preventing them from absconding or committing further crimes in the process, are legitimate and reasonable goals. See, e.g., Salerno, 481 U.S. at 747; Bell v. Wolfish, 441 U.S. 520. Nor is there any doubt, in light of the disturbing rates of abscondment and recidivism discussed above, that the detention requirement rationally advances these objectives, or that a rational relationship exists between the "aggravated felon" classification and danger to the community and flight risk. Hence, §1226(c)(2) rests on a legitimate basis, and petitioner's substantive due process challenge must fail. See Flores, 507 U.S. at 306; Fiallo, 430 U.S. at 794-95; Avramenkov v. Immigration and Naturalization Service, 99 F.Supp.2d at 215-18.

Section 1226(c) also does not violate petitioner's procedural due process rights. In assessing the legitimacy of any procedural due process claim, great judicial deference should be given to Congress' determination of what process is due. See Weiss, 510 U.S. at 176-77. The due process analysis set out in Mathews v. Eldridge, 424 U.S. 319, (1976), requires the court "to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, **with a thumb on the scale in favor of the statute's constitutionality.**" Parra, 172 F.3d at 957 (emphasis added).

As the Seventh Circuit correctly observed, criminal aliens covered by §1226(c) do not have any constitutional "right" or "liberty interest" in avoiding detention pending removal proceedings, because, by virtue of their criminal conduct and convictions, they have "forfeited any legal entitlement to remain in the United States." See Parra, 172 F.3d at 958. Consequently, "[t]he private interest here is not liberty in the abstract, but [merely] liberty in the United States by someone who is no longer entitled to remain in this country." Id.

The Parra court's reasoning applies in this case. Because petitioner is properly in the INS' jurisdiction and does not dispute the material facts underlying the criminal removal charges, the Court should significantly reduce the weight accorded

his private interests in evaluating the due process claim. Parra, 172 F.3d at 958.

Moreover, on the weight of the Government's interest, the Court may not substitute its judgment for the informed decisions of Congress. Cf. Weiss, 510 U.S. at 176-77. Parra's reasoning is legally sound:

> The Supreme Court held in United States v. Salerno, 481 U.S. 739 (1987), that pretrial detention in criminal prosecutions (a parallel to pre-removal detention) comports with the Constitution even though the private interest is greater, the likelihood of error must be deemed significant given the prosecutor's high burden at a criminal trial, and the public interest is less (for the skip rate on bond in criminal prosecutions is well under 90%). Given the sweeping powers Congress possesses to prescribe the treatment of aliens, see Fiallo v. Bell, 430 U.S. 787, 792 (1977), the constitutionality of §1226(c) is ordained.

Parra, 172 F.3d at 958. For these reasons, the Court should conclude that §1226(c) does not violate petitioner's procedural due process rights.

As one court recently recognized, petitioner is almost certainly going to be removed as an aggravated felon such that he has no significant liberty interest implicated by §1226(c). The United States, on the other hand, has a substantial interest in avoiding individualized bond hearings for individuals Congress has already determined pose a significant risk of flight and/or threat to the community. As such, there is no procedural due process violation. Avramenkov v. Immigration and Naturalization Service,

99 F.Supp.2d at 215-16 (citing Eldridge, 424 U.S. at 334-36). See also text supra at 3-4 (collecting cases).[5]

**Conclusion**

For the above-stated reasons, petitioner's detention pursuant to 8 U.S.C. §1226(c) is constitutional and the habeas petition should be denied.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

KATE L. MERSHIMER
Assistant United States Attorney
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108-1754
717/221-4482

Date: March 26, 2001

[5] We also note that petitioner's detention is not indefinite in the least. The removal process does not take long -- with the BIA's decision in this case expected any day.

Only the Westlaw citation is currently available.

United States District Court, N.D. California.

Dexter Antonio LEZCANO, (aka Luzcano) Petitioner,
v.
Janet RENO, Attorney General of the United States, Charles De Moore, Acting Assistant Director, San Francisco Office, U.S. Immigration and Naturalization Service, Respondents.

No. C 99-4894 MJJ.

Aug. 4, 2000.

ORDER DENYING PETITION FOR HABEAS CORPUS

JENKINS, J.

*1 Petitioner has filed an application for a writ of habeas corpus entitling him to release from mandatory detention by the Immigration and Naturalization Service. The Court has read the moving and responding papers. For the reasons set forth below, the Court denies petitioner's request.

I. BACKGROUND

Dexter Antonio Lezcano (a/k/a Luzcano) is currently in INS custody pending a deportation hearing. He has filed a petition for habeas corpus with this Court, contesting the constitutionality of section 236(c) of the Immigration and Nationality Act ("INA"), 8 U .S.C. § 1226(c), which allows the Immigration and Naturalization Service ("INS") to detain him without possibility of release pending removal proceedings.

Mr. Lezcano has been a lawful permanent resident of the United States since 1982. Since that time he has been charged with a number of criminal offenses ranging from petty theft to second degree robbery. At least one incident involved a parole violation. He has been sentenced to time in excess of one year, including time served and suspended sentencing.

On or about January 23, 1998 Mr. Lezcano was sentenced to sixteen months in state prison. He received credit for 397 days served earlier and his sentence was deemed completed. He was remanded to INS custody and, under the Transitional Period Custody Rules in place at that time, he was released on a $5,000 bond on April 23, 1998. However, a pre-existing warrant was issued on September 19, 1997 for failure to appear in court on a shoplifting complaint and Mr. Leczano was once again incarcerated for 25 days on January 31, 1998. He was released into INS custody after serving his sentence. On November 1, 1999 the immigration judge denied Lezcano's motion for a redetermination of bond. He did not appeal. He is currently being held on no-bail status pending removal proceedings by the INS because the transitional rules allowing release on bond have now lapsed.

Mr. Lezcano is considered deportable because he is a person convicted of an aggravated felony, in this case the 1994 theft offense for which the term of imprisonment is more than one year. *See* 8 U.S.C. § 1101(a)(43)(G). Such terms of imprisonment include suspended sentences. *See* 8 U.S.C. § 1101(a)(48)(B).

Mr. Lezcano's habeas corpus petition is based on several theories. He argues that he is entitled to a bond hearing because his last conviction in Mateo County Superior Court was based on a petty theft warrant that pre-dated October 9, 1998, the date of expiration of the Transitional Rules.

Significantly, Petitioner also challenges the constitutionality of section 236(c) of the INA, which allows or, arguably, requires the INS to hold him without bond pending the completion of removal proceedings. He challenges the statute on its face and as applied as violative of the Fifth and Fourteenth Amendment substantive and procedural due process protections of the U.S. Constitution. He contends that he is neither a flight risk or a danger to public safety, and is therefore entitled to a hearing on whether he is eligible for release on bond.

II. LEGAL STANDARD

A. Statutory Authority for Mandatory Detention Under Section 236.

*2 In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("Immigration Reform Act" or "IIRIRA"), which substantially amended the INA. The amendments included "Transition Period Custody Rules," IIRIRA section 303(b)(3), which provided for Immigration Court bond hearings to aliens with criminal convictions, allowing the alien the right to demonstrate legal entry into the United States and the right to show that the alien did not present a

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

substantial risk of flight or threat to persons or property. If the alien met these criteria, the Immigration Court had the discretion to set bond pending the final administrative action on the case.

On October 9, 1998, IIRIRA's Transition Period Custody Rules expired and INA section 236(c), 8 U.S.C. § 1226(c), became effective. This section provides in pertinent part that the Attorney General may release an alien detained pursuant to section 236(c) only in narrow circumstances (generally, witness cooperation) and when the alien satisfies the Attorney General that the release will not pose a danger to the safety of other persons or of property and the individual is likely to appear for any scheduled proceeding.

Section 1252(a)(2)(B) reads in pertinent part:

> The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

The term "aggravated felony" includes all such acts committed on or after November 18, 1988. *See Cuomo v. Barr,* 812 F.Supp. 324, 330 (N.D.N.Y.1993). Congress has justified this level of detention by concluding that criminal aliens have already received due process prior to conviction for the felony itself. (Return and Opp'n to Pet. for Habeas Corpus [hereinafter "Opp'n"] at 3:14-25, citing 141 Cong. Rec. S7808, 7823 (June 7, 1995)).

B. Judicial Interpretation of Section 236.

This Court has jurisdiction under 28 U.S.C. § 2241 to hear claims challenging section 236 of the INA. Continued detention during the pendency of the INS removal process is subject to review despite the "sweeping powers" of Congress to prescribe the treatment of aliens. *See* ***Parra v. Perryman,*** **172 F.3d 954, 957-58 (7th Cir.1999)** (holding that judicial review of section 236 is proper); *see also Fiallo v. Bell,* 430 U.S. 787, 792 (1997) (urging judicial deference to policies enacted by Congress in immigration matters). Although section 236(e) of the INA [8 U.S.C. § 1226(e) ] states that no court may set aside any action or decision by the Attorney General regarding the detention of any alien, at least one court has held that this does not strip the district court of jurisdiction to review a petition for habeas corpus based on a challenge to mandatory detention pending removal proceedings because the Act does not contain an express and unequivocal revocation of habeas jurisdiction. *See Grant v. Zemski,* 54 F.Supp.2d 437, 441 (E.D.Pa.1999).

***3** In ***Parra,*** **172 F.3d at 958,** the Seventh Circuit ruled that section 236(c) is constitutional but other courts have disagreed. The court in *Martinez v. Greene,* 28 F.Supp.2d 1275, 1283 (D.Colo.1998), called attention to the "severe and unyielding nature of § 236 and the need for individualized bond determinations." It found the statute unconstitutional on its face because it violated the constitutional right to due process of law guaranteed by the Fifth Amendment. *Id.* at 1284. Most courts, however, have focused on the constitutionality of the statute as applied to the facts and circumstances in the individual claim for relief.

III. ANALYSIS

A. Release from detention pending INS removal proceedings is highly conditional.

Deportable criminal aliens do not enjoy a fundamental right to be free from detention pending removal proceedings. *See* ***Parra v. Perryman,*** **172 F.3d 954, 958 (7th Cir**.1999); *Alikhani v. Fasano,* 70 F.Supp.2d 1124, 1133 (S.D.Cal.1999); and *Sierra-Tapia v. Reno,* 1999 WL 803898 at **4-5 (S.D.Cal.1999). The U.S. Supreme Court has not yet directly addressed the constitutionality of section 236(c)'s broad prohibition against release. Its closest decision is *INS v. National Ctr. for Immigrants' Rights, Inc.,* 502 U.S. 183 (1991), in which the Court upheld section 242(a) of the INA, which bars employment of aliens released on bond pending deportability determination because administrative procedure provided for individualized determinations of eligibility to work. *See id.* at 185 & 196.

At the appellate level, only the Seventh Circuit has addressed section 236(c). In ***Parra v. Perryman,*** the court upheld the constitutionality of mandatory detention, concluding that it bears a rational relationship to the governmental purpose of prohibiting flight or danger to society and reemphasizing that aliens who violate criminal laws in this country have no "fundamental" right to liberty while removal is pending. *See* **172 F.3d at 958.** ***Parra*** dealt with a detainee whose removal to Mexico had already been adjudicated; his legal right to remain in the United States had "come to an end" and

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

the court observed that he was merely insisting on "postponing the inevitable" by requesting release on bond. *Id.* However, the court raised the possibility in dicta that certain fact-specific defenses could be raised in other cases against detention without bond: evidence of possible citizenship; evidence that the conviction does not fall within the ambit of the removal statute; or evidence that indefinite detention will result because the country of citizenship will not take the petitioner back. *See id.*

Nevertheless, the issue of the constitutionality of section 236(c) is percolating in the district courts. There is particular disparity among the courts within the Ninth Circuit. Decisions supporting the constitutionality of Section 236 include: *Sierra-Tapia v. Reno,* 1999 WL 803898 (S.D.Cal.1999) (upholding denial of release on bond under statute to petitioner convicted of knowingly and intentionally importing marijuana and possessing 42.5 pounds of marijuana with intent to distribute); *Alikhani v. Fasano,* 70 F.Supp.2d 1124 (S.D.Cal.1999) (upholding application of statute to petitioner convicted of possession of methamphetamine for sale and other offenses); *Diaz-Zaldierna v. Fasano,* 43 F.Supp.2d 1114 (S.D.Cal.1999) (upholding the application of the statute to petitioner convicted of possession of crack cocaine, despite almost ten years as a lawful permanent resident in this country without a conviction for an aggravated felony). *See also: Okeke v. Pasquarell,* 80 F.Supp.2d 635 (W.D.Tex.2000) (upholding the statute as applied to three petitioners convicted respectively of possession of cocaine possession, of robbery, assault and possession of marijuana, and of unlawfully carrying a weapon); *Galvez v. Lewis,* 56 F.Supp.2d 637 (E.D.Va.1999) (upholding statute as applied to illegal alien convicted of cocaine possession); and *Reyes v. Underdown,* 73 F.Supp.2d 653 (W.D.La.1999) (determining that it was not excessive for Congress to find that aliens convicted of controlled substances offences can be presumed to be dangerous, precluding release on bail, pending the outcome of removal proceedings).

*4 Approximately six decisions have reached a contrary result, and all have involved unusual circumstances. *See: Szeto v. Reno,* 2000 WL 630869 (N.D.Cal. May 5, 2000) (Breyer, J., finding mandatory detention unconstitutional as applied to petitioner who "vigorously contested" removability based in part on 20-year-old convictions); *Danh v. Demore,* 59 F.Supp.2d 994 (N.D.Cal.1999) (Smith, J., holding that application of Section 236 unconstitutionally infringes the rights of resident aliens to substantive and procedural due process when petitioners contested removability based on a single instance of welfare fraud and asserted only the "modest right" to an individualized bond determination); *Rivera v. Demore,* 1999 WL 521177 (N.D.Cal.1999) (Henderson, J., holding that a rehabilitated petitioner was entitled to a bond hearing when his detention was based on a vacated sentence for an old crime that did not qualify as an aggravated felony at the time it was committed); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999) (holding that petitioner, who had a significant history of military and public service in the U.S., was entitled to a bond hearing; the burden was minimal when he was already entitled to a hearing on removal); and *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998) (finding statute unconstitutional as applied to petitioners convicted respectively for menacing, drug trafficking, menacing and third-degree assault and misdemeanor firearms violation); *see also Chamblin v. INS,* 1999 WL 803970 (D.N.H.1999) (recommending bail hearing within 30 days for petitioner convicted of aggravated felony theft of driveway sealant despite mandatory detention provided in Section 236(c)).

B. Prior decisions from the Northern District of California allowing a bond hearing despite the express language of section 236(c) are distinguishable from the instant case on the circumstances and facts.

The courts in *Danh* and *Szeto* both declined to find section 236(c) unconstitutional on its face and limited their analyses to its application to the petitioners before them. [FN1] To mount a facial challenge to a statute, the petitioner would have to show that no set of circumstances exists under which the statute would be valid. *See United States v. Salerno,* 481 U.S. 739, 745 (1987). However, a petitioner who challenges the statute as applied need only show that the statute is invalid as applied to him. *See Danh,* 59 F.Supp.2d at 998.

FN1. The court in *Rivera* took a similar approach; the decision is discussed in greater detail in subsection C, below.

1. Substantive due process rights under section 236(c).

The case law is clear that an alien in deportation proceedings is entitled to substantive and due process of the law. *See Reno v. Flores,* 507 U.S. 292, 306 (1993). Confinement can occur but it cannot be arbitrary. *See Danh,* 59 F.Supp.2d at 998, citing

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

*Doherty v. Thornburgh,* 943 F.2d 204, 209 (2d Cir.1991).

The *Danh* court held that heightened scrutiny must be applied to a statute that infringes a petitioner's substantive due process rights. It applied the test articulated in *United States v. Salerno,* 481 U.S. 739, 747 (1987), which asks whether governmental restriction is "excessive" in relation to its purpose. See *Danh,* 59 F.Supp.2d at 999. The *Dahn* court outlined the four governmental purposes of the broad mandate of Section 236(c): (a) to prevent flight; (b) to protect the public from potentially dangerous criminal aliens; (c) to correct the failure of prior bond procedures; and (d) to repair the flaws in the American immigration system caused by the inability of the government to detain and remove criminal aliens. It concluded that a long history of lawful residency, extensive family ties, and the relatively benign nature of the convictions (one-time welfare fraud) made flight by the petitioners or danger to the public unlikely. *See Danh,* 59 F.Supp.2d at 1002. The court contrasted its decision to the outcome in *Diaz-Zaldierna,* where section 236(c) was found to pass constitutional muster when applied to an alien who had committed a serious drug-related offense. *See* 59 F.Supp.2d at 1002.

***5** The petitioners in *Danh* argued successfully that a single incidence of welfare fraud did not qualify as an "aggravated felony" under Section 236 and that deportation would be futile because Vietnam refused at that time to take back citizens who have resided in the United States. Based on these facts, Judge Smith concluded that the petitioners were entitled to a bond hearing because they did not present a flight risk or a danger to society that outweighed the fundamental right to freedom from arbitrary detention. *See Danh,* 59 F.Supp.2d at 1003.

The facts in the instant case are readily distinguishable. Petitioner has committed a string of crimes, one of which involved a robbery at knife-point and an attack on a fourteen-year-old child. In contrast to the detainees in *Danh,* he does not allege extensive family ties or dependent children, although his parents and spouse are here and his wife, a U.S. citizen, has filed an application for an immigrant visa for him. He does not provide evidence of consistent employment, contending only that he was gainfully employed during the time he was out on bond after serving time in jail. The proven threat to public safety and the flight risk are precisely the dangers contemplated by Congress in enacting this statute.

Although the facts in *Szeto* are somewhat closer to the instant case, its unique procedural history determined the outcome favoring the petitioner. Mr. Szeto had a record of burglary, robbery, and petty theft. After he completed his last sentence, the INS detained him and placed him in removal proceedings based on aggravated felony and a sentence of more than one year in prison. He requested and received vacation of the conviction, re-pled, and was sentenced to 364 days. The *Szeto* court found that "[s]ince petitioner has now been sentenced to less than a year for the petty theft, the new conviction does not constitute an "aggravated felony" under section 237(a)(2)(A)(iii)." The INS then attempted to change the charges and base detention and deportation on conviction for two or more crimes involving moral turpitude under Section 237(a)(2)(A)(ii).

The court concluded that section 236(c) was unconstitutional as applied to Mr. Szeto. The court found that he had a substantive due process right to be free of arbitrary confinement because the original basis for detention had evaporated and the government was now trying to base detention in part on two twenty-year-old charges that the INS conceded it waived in 1985. *See* 2000 WL 630869 at *4. The instant case is distinguishable. Mr. Lezcano's convictions and incarceration are recent and they fall squarely within the category of aggravated felonies that present grounds for mandatory detention pending removal. The government has not engaged in any attempt to adjust or recharacterize the grounds for detaining Mr. Lezcano.

2. Procedural due process rights under section 236(c).

If a restriction on liberty survives substantive due process scrutiny, the court must consider the further question of whether the restriction is implemented in a procedurally fair manner. *See Dahn,* 59 F.Supp.2d at 1004, citing *United States v. Salerno,* 481 U.S. 739, 746 (1987). To determine whether a statute or government conduct satisfies procedural due process, courts must balance the following factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest; (3) the probable value of additional or substitute procedural safeguards; and (4) the government's interest, including fiscal and administrative burdens that additional or substitute safeguards would impose. *See Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) (establishing that legal aliens are entitled to due

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

process). The court in ***Parra,*** applying the test to the constitutionality of section 236(c), added that the court should place a "thumb on the scale" in favor of the constitutionality of the statute. **172 F.3d at 958.** [FN2]

FN2. The ***Parra*** court observed that detention in criminal prosecutions comports with the Constitution even though there is much more at stake than in an INS detention: the liberty interest is greater for one accused of a crime, the risk of error is more significant (given that the prosecutor ultimately must offer proof beyond a reasonable doubt to obtain a conviction), and the skip rate on criminal bonds is quite low in comparison to immigration bonds. *See* **172 F.3d at 958.**

***6** The court in *Danh* emphasized that the interest at stake is freedom from *arbitrary* detention. In the instant case, the detention is rational, given Mr. Lezcano's criminal history, the danger his conduct poses to society, and the risk of flight. These concerns outweigh other considerations and set the balance in favor of the statutory mandate.

C. Applicability of the Transitional Rules.

Petitioner advances the argument that he is entitled to a bond hearing under the Transitional Rules in effect during the two-year period prior to October 9, 1998. These rules were substantially more generous in allowing bond hearings than section 236(c), effective 10/9/98, which states in pertinent part that the Attorney General shall take a deportable alien into custody "when the alien is released" on parole, supervised release, or probation. Section 236(c) requires mandatory detention except for persons involved in the witness protection program.

Given the nature of section 236(c), petitioners have a strong incentive to argue that the transitional rules should apply. It is clear that section 236(c) is prospective and applies to individuals released after the expiration of the transitional rules. *See Alwaday v. Beebe,* 43 F.Supp.2d 1130, 1133 (D.Or.1999); *Velasquez v. Reno,* 37 F.Supp.2d 663, 670 (D.N.J.1999). However, unusual circumstances do sometimes arise, as in the instant case.

Petitioner in the instant case attempts to argue that the transitional rules were in effect at the time the warrant issued for the offense resulting in his last incarceration and immediate remand into INS custody and he should therefore be entitled to a bond hearing pursuant to the earlier scheme. The argument is unpersuasive. Due process rights attach at the time one is released from custody into INS detention. In *Rivera,* the Northern District of California determined that a Salvadoran petitioner was entitled to a bond hearing when the government based mandatory detention on two 1994 offenses (false imprisonment and assault with a deadly weapon) in which the sentences had previously been vacated in order to allow him to apply for asylum. The court considered the temporal reach of section 236(c)'s detention mandate and concluded that it could not be applied to "aliens released from criminal incarceration years before INS took custody." 1999 WL 521177 at *4. In *Rivera,* the petitioner was released during the period of the transitional rules and thus was not subject to mandatory detention under section 236(c) because the INS had waited several years to bring him in.

In contrast, Mr. Lezcano was taken into custody upon his release from jail, and well after the lapse of the transitional rules: "[I]f taken into INS custody immediately, the mandatory detention rules apply, precluding the risk of flight arising from release on bond and avoiding altogether the administrative burden and expense of bond hearings." *Rivera,* 1999 WL 521177 at *4. The statute does not require that detention must occur at the time of release for the crime that provides the basis for deportation; the court in *Rivera* emphasizes that the purpose of INS mandatory detention upon release is to prevent flight and danger to society. In this case, Mr. Leczano was taken into INS custody as soon as possible, and at a time when section 236(c) was in full force.

D. NACARA Relief.

***7** In his petition, Mr. Leczano claims that failure to grant a bond hearing interferes with his efforts to obtain relief in the form of suspension of deportation under NACARA, the Nicaraguan and Central American Relief Act, INA section 202 et seq. [FN3] In addition to attacking NACARA as violative of equal protection, he argues in his habeas petition that detention has "severely hamstrung preparation for a meaningful Withholding of Removal hearing." While Petitioner's plight is sympathetic, this argument has no legal effect in this 236(c) determination, in which detention is mandatory in order to prohibit flight or danger and cannot be avoided merely because it may impede Mr. Luczano's attempts to avoid removal.

FN3. NACARA allows a native and citizen

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

of Nicaragua to apply for an adjustment in status if he has been present in the United States for a certain period, but such an adjustment would require a waiver of criminal convictions. Petitioner argues that NACARA discriminates against him as a lawful resident convicted of an aggravated felony, because he is ineligible for adjustment of status. In contrast, an illegal alien could qualify for relief under NACARA.

E. Conclusion.

Petitioner's arguments for habeas corpus are unpersuasive. He has failed to show that section 236(c) is unconstitutional on its face or as applied. He has also failed to demonstrate that the Transitional Rules, which offered greater opportunities for release on bond pending deportation hearings, apply to his current detention. Finally, he is unpersuasive when he argues that failure to grant a bond hearing interferes with his rights under NACARA, which sets a higher standard for legal aliens convicted of aggravated felonies who seek to adjust their status. For these reasons, the petition for habeas corpus is denied.

IV. ORDER

Based on the foregoing, the Court denies petitioner's application for a writ of habeas corpus.

IT IS SO ORDERED.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Yaser B. KAHN, Petitioner,
v.
Brian PERRYMAN, District Director of the Immigration and Naturalization Service, and Janet Reno, Attorney General of the United States of America,
Respondents.

No. 00 C 3398.

July 31, 2000.

*MEMORANDUM OPINION AND ORDER*

MAROVICH, J.

***1** Now before the Court is Yaser B. Kahn's ("Kahn") habeas corpus petition. Kahn is being held by the Immigration and Naturalization Service ("INS") pursuant to Section 236(c) of IIRIRA, 8 U.S.C. § 1226(c) (" § 1226"), and 8 C.F.R. § 3.19(h)(2). Kahn requests that this Court find § 1226 unconstitutional and grant his petition for habeas relief.

*BACKGROUND*

Kahn is a legal permanent resident of the United States who, on September 7, 1999, plead guilty to possession of cannabis with intent to deliver and was sentenced to three years imprisonment. On February 9, 2000, Kahn presented his motion to vacate his plea which was denied on March 2, 2000. That same day, Kahn appealed the denial of his motion.

On May 10, 2000, the Illinois Department of Corrections released Kahn and transferred him to the INS. Based on his status as an aggravated felon, the INS initiated removal proceedings. On May 31, 2000 an immigration judge ordered Kahn released on a $5,000 bond. Following the statutorily prescribed procedures, the INS immediately appealed this ruling to the Board of Immigration Appeals. Kahn is now being held pending his removal proceedings on the merits.

*DISCUSSION*

The gravamen of Kahn's argument is that the mandatory detention provision of § 1226(c) violates his procedural and substantive due process rights under the 5th and 14th Amendments. Despite Kahn's thoughtful arguments and despite case law from other circuits which supports Kahn's position, this Court finds its hands tied by Seventh Circuit precedent to the contrary. *See* ***Parra v. Perryman,*** **172 F.3d 954 (7th Cir.**1999) (" **§ 1226(c) plainly is within the power of Congress**"). Kahn contends that ***Parra*** is inapplicable because, unlike the petitioner in ***Parra,*** Kahn has not conceded his removability or his status as an aggravated felon, as evidenced by his motion to vacate his guilty plea and subsequent appeal. The Court finds this argument unpersuasive.

***Parra*** addressed a constitutional challenge to § 1226 brought by an alien being held by INS pending his removal as an aggravated felon. The only notable difference between the facts of ***Parra*** and the present case, is that the petitioner in ***Parra*** conceded both his status as an aggravated felon and his removability. This Court is not convinced, however, that the Seventh Circuit's holding in ***Parra*** is so narrow as to only capture such situations where both of these concessions have been made. Allowing a petitioner, such as Kahn, to baldly deny his status as an aggravated felon and his removability would render the ***Parra*** decision a meaningless academic hypothetical.

In ***Parra,*** the Seventh Circuit held unequivocally that **"[o]ne line of argument that cannot be made at any time, in any court, is that a person with a conviction for an aggravated felony is entitled to discretionary relief permitting him to remain in the United States."** ***Id.*** **at 956** (citing *Yang v. INS,* 109 F.3d 1185, 1190-92 (7th Cir.1997)) Therefore, if Kahn, in fact, has been convicted of an aggravated felony, then "removal is overwhelmingly likely." *Id.* The Seventh Circuit reasoned that persons who have committed aggravated felonies and are consequently "subject to § 1226 have forfeited any legal entitlement to remain in the United States." ***Id.*** **at 958.** After weighing the petitioner's arguments that § 1226 is unconstitutional, the Seventh Circuit decided: "Given the sweeping powers Congress possesses to prescribe treatment of aliens, the constitutionality of § 1226(c) is ordained." ***Id.***

***2** In order for this Court to distinguish the present case from ***Parra,*** it would have to be presented with a tenable argument that Kahn was not an aggravated felon subject to removal pursuant to § 1226. Kahn has presented no such argument. Kahn, apparently in

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

a last minute effort to remain in this country, has filed a motion for a vacated plea of his criminal conviction in state court. He now argues that this filing renders his state court judgment "not final". This argument is completely without merit. Kahn filed his motion five months after his sentencing and the motion was denied by the trial judge. The petitioner then appealed this denial. Such an appeal is untimely. Under Illinois Supreme Court Rule 604(d), guilty pleas may not be appealed unless a motion to withdraw the plea and vacate judgment is filed *within thirty days* of the date of sentencing. ILL. SUP.CT. 604(d) Thus, petitioner waived his right to a direct appeal by failing to file such motion timely. For immigration purposes, a conviction is final when an alien has exhausted his right to direct appeal despite any possibility for discretionary review. *Matter of Polanco,* 20 I & N Dec. 894 (BIA 1994); 3B AM.JUR. 2d *Aliens & Citizens* § 1852. Accordingly, Kahn, unable to deny his status as an aggravated felon or his removability, is in the same position as ***Parra*** who conceded these points. **"A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure the removal actually occurs."** ***Parra,*** **172 F.3d at 958.** Having found that the present case is covered by the holding in ***Parra,*** this Court follows the Seventh Circuit in holding that § 1226 is constitutional as applied to these facts.

*CONCLUSION*

For the reasons stated above, Kahn's petition for a writ of habeas corpus is denied.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, M.D. Pennsylvania.

Kingsley CHUKWUEZI, Petitioner
v.
Janet RENO, et al., Respondents

No. CIV. A. 3:CV-99-2020.

May 16, 2000.

MEMORANDUM

VANASKIE, Chief J.

*1 Pending in the above-captioned matter are the objections of respondent Attorney General Janet Reno to Magistrate Judge Thomas M. Blewitt's Report and Recommendation, which proposes that the challenge of petitioner Kingsley Chukwuezi to the mandatory detention provisions of 8 U.S.C. § 1226(c) be sustained. Specifically, Magistrate Judge Blewitt found persuasive those district court decisions which found unconstitutional section 1226(c)'s mandatory detention of an alien pending the outcome of removal proceedings that had been instituted on the ground that the alien had been convicted of an "aggravated felony."

Chukwuezi, a native and citizen of Nigeria, was lawfully admitted to the United States in 1990, and became a lawful permanent resident alien in May of 1997. Chukwuezi alleges that he has been married to a United States citizen since December of 1992. The factual premise for the decision to commence removal proceedings against Chukwuezi is his January 28, 1998 conviction in the United States District Court for the District of Maryland of the offense of fraud and misuse of an alien registration card in violation of 18 U.S.C. § 1546(a).

On or about May 17, 1999, Chukwuezi completed his 15-month sentence for this conviction. Upon his discharge from confinement by the federal Bureau of Prisons, Chukwuezi was taken into custody by the Immigration and Naturalization Service (INS) under the authority of section 236(c)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c)(1). [FN1] The INS asserts that Chukwuezi is deportable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), on the ground that his conviction constitutes an aggravated felony as defined in Section 101(a)(43)(P) of the Act, 8 U.S.C. § 1101(a)(43)(P). [FN2] On September 2, 1999, Chukwuezi was ordered deported to Nigeria based upon his conviction. He was also denied release pending the completion of removal proceedings due to the mandatory detention provisions of 8 U.S.C. § 1226(c).

FN1. Section 1226(c) states that "[t]he Attorney General shall take into custody any alien who ... is deportable by reason of having committed ... any [aggravated felony as defined in 8 U.S.C. § 1101(a)(43) ] ... when the alien is released [from confinement pursuant to a conviction]." Section 1226(c)(1) thus contemplates that, upon discharge of a sentence of imprisonment, an alien will be taken into INS custody and remain detained until completion of removal proceedings. Only if the release of such an alien is necessary to provide protection to a witness or person cooperating with a criminal investigation and the Attorney General is satisfied that such an alien will not pose a danger to other persons or property and will not flee may the alien be released while removal proceedings are pending. *See* 8 U.S.C. § 1226(c)(2).

FN2. Section 101(a)(43)(P) defines the term aggravated felony as including "an offense of ... (I) ... falsely making, forging, counterfeiting, mutilating or altering a passport or instrument in violation of Section 1543 of Title 18, or is described in Section 1546(a) of such title (relating to document fraud) and (ii) for which the term of imprisonment is at least 12 months ...." 8 U.S.C. § 1101(a)(43)(P).

Contending that his offense should not be regarded as a deportable aggravated felony, Chukwuezi has appealed the order of removal to the Board of Immigration Appeals. On November 17, 1999, he filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the mandatory detention provisions of § 1226(c) as unconstitutional on its face and as applied to him. [FN3]

FN3. Chukwuezi's habeas petitions also challenged the Immigration Judge's determination that Chukwuezi's offense of conviction is an aggravated felony. Because that matter is still before the Board of

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Immigration Appeals, consideration of that issue in this case is premature.

As Magistrate Judge Blewitt observed, the judicial decisions on the validity of the mandatory detention provisions of 8 U.S.C. § 1226(c) are in conflict. In ***Parra v. Perryman,* 172 F.3d 954 (7th Cir**.1999), *Galvez v. Lewis,* 56 F.Supp.2d 637 (E.D.Va.1999), and *Diaz-Zaldierna v. Fasano,* 43 F.Supp.2d 1114 (S.D.Cal.1999), attacks on the constitutionality of the mandatory detention provisions of § 1226(c) were rejected. By way of contrast, in *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa.1999); *Danh v. Demore,* 59 F.Supp.2d 994 (N.D.Cal.1999), *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Ore.1999), and *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998), the mandatory detention provisions were found to be unconstitutional.

***2** Having given plenary consideration to the matter, as required when a party files objections to a Magistrate Judge's Report and Recommendation, 28 U.S.C. § 28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks,* 885 F.2d 1099, 1106 n. 3 (3rd Cir.1989); *Henderson v. Carlson,* 812 F.2d 874, 878 (3rd Cir.), *cert. denied,* 484 U.S. 837 (1987); *Owens v. Beard,* 829 F.Supp. 736 (M.D.Pa.1993), I find that the decisions rejecting constitutional challenges to § 1226(c) are limited to the factual scenarios presented in those cases and that those factual scenarios are materially distinguishable from that presented here. For example, in ***Parra,*** the Seventh Circuit relied upon the fact that the petitioner conceded that he was a removable alien because of his conviction of aggravated sexual assault. Because of this concession, the petitioner effectively had the keys to his release as he could have simply consented to his removal to his native Mexico. Judge Easterbrook, writing for the unanimous appeals court panel, observed that "[a] criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay [to effect removal], and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." 172 F.3d at 978. In *Galvez,* the petitioner was an illegal alien with a drug conviction. In finding that mandatory detention as applied in *Galvez* was not unconstitutional, the court explained that "[t]his case turns on Petitioner's unlawful alien status in this country." 56 F.Supp.2d at 646. In *Diaz-Zaldierna,* the petitioner had been convicted of possession of crack cocaine, and the court concluded that the "controlled substances conviction is a sufficient ground to detain him without possibility of bail, at least for a reasonable time while his removal is adjudicated." 43 F.Supp.2d at 1120.

In this case, unlike Parra, Chukwuezi does not concede that his conviction requires his removal from the United States. Unlike Galvez, Chukwuezi is not an illegal alien in this country; he has attained lawful permanent residence status. And unlike Diaz-Zaldierna, Chukwuezi does not stand convicted of a drug offense. Because the rationale of *Parra, Galvez,* and *Diaz-Zaldierna* were so linked to the factual settings of those cases, their holdings are unpersuasive here.

More persuasive are those decisions that have recognized that mandatory detention whenever the Attorney General charges an alien with an aggravated felony conviction sweeps too broadly. Those cases have recognized that INS detention is indistinguishable from punitive incarceration. Although INS detention is plainly regulatory and not intended as punishment, *see Martinez,* 28 F.Supp.2d at 1282, the reality is that it is as restrictive as punitive confinement. As Judge Weis remarked recently:

> Characterizing prolonged detention as anything other than punishment might be somewhat puzzling to petitioner, who remained in jail under the same conditions as before the state released him, although his status had technically changed from that of a state inmate to an INS "detainee." Similarly, an alien whose detention occurs in a maximum security federal prison may be forgiven for wondering when his punishment stopped and detention began. As Justice Jackson remarked, "[i]t overworks legal fiction to say that one is free in law when by the commonest of common sense he is bound ." *Mezei,* 345 U.S. at 220 (Jackson, J., *dissenting* ). It is similarly unrealistic to believe that these INS detainees are not actually being "punished" in some sense for their past conduct.

***3** *Ngo v. INS,* 192 F.3d 390, 397-98 (3d Cir.1999). Finding a fundamental liberty interest implicated in the detention of aliens awaiting a final removal decision, the courts that have found § 1226(c) unconstitutional have applied the compelling interest test of *United States v. Salerno,* 481 U.S. 739 (1987). *See, e.g., Danh,* 59 F.Supp.2d at 1000-01; *Van Eeton,* 49 F.Supp.2d at 1189-90; *Martinez,* 28 F.Supp.2d at 1281. Concluding that mandatory detention of *all* criminal aliens is "excessive" in relation to the purposes sought to be advanced by § 1226(c)--prevention of flight, protection of the community, and

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

assure enforcement of the immigration laws--those courts have directed that the INS afford some process by which a criminal alien can secure release pending the outcome of removal proceedings.

As note above, I find the rationale of cases such as *Danh, Van Eeton* and *Martinez* to be compelling. Clearly in a case such as this one, involving a lawful permanent resident, incarceration implicates a liberty interest. Equally clearly, a statute that presumes that all criminal aliens will abscond or pose a threat to safety sweeps too broadly.

In some cases, § 1226(c) would ensnare a person who has resided in the United States for decades and has an arguable claim to citizenship. *See e.g., Van Eeton, supra.* As to such a person, he or she would be detained notwithstanding the existence of a bona fide challenge to the removal proceedings and the absence of any evidence of a flight risk or threat to safety. Unlike the situation confronting the court in ***Parra,*** a person subject to the removal process who claims citizenship cannot be regarded as having the keys to liberty. On the contrary, compelled confinement may provide the motivation to forego pursuit of an arguably valid defense to removal.

Also swept up in § 1226(c) is a lawful permanent resident alien's challenge to a determination by the INS that the offense of conviction constitutes an "aggravated felony." Section 101(a)(43) of the Immigration and Naturalization Act is a lengthy and complex provision. There will be cases where it is unclear that a criminal offense constitutes an "aggravated felony." In such cases, a lawful permanent resident of long standing will be forced to remain in custody while pursuing a challenge to the INS determination that he or she is subject to removal notwithstanding the absence of any evidence of a risk of flight or danger to the community.

The fact that an Immigration Judge will make an initial decision as to whether an offense of conviction constitutes an aggravated felony does not ameliorate the problem. Even where an Immigration Judge makes a determination that the detainee is not subject to removal, the INS may continue to detain the alien by filing its own notice of intent to appeal. *See* 8 C.F.R. § 3.19(1)(2) (1999). [FN4] Thus, even a prompt determination by an Immigration Judge that an alien's conviction does not constitute an aggravated felony so that he or she is not subject to removal does not alter the alien's detention status under § 1226(c).

FN4. Section 3.19(l)(2), in pertinent part, provides:

> If an alien is subject to [8 U.S.C. § 1226(c)(1) ], ... any order of the immigration judge authorizing release (on bond *or otherwise* ) shall be stayed upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EOIR-43) with the Immigration Court on the day the order is issued, and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals. [Emphasis added.]

*4 Our Court of Appeals' decision in *Ngo v. INS,* 192 F.3d 390 (3d Cir.1999), lends additional support to a determination that the mandatory detention provisions of § 1226(c) do not pass constitutional muster. In *Ngo,* the court held that long term detention of an alien subject to a final removal order did not violate due process provided there was a possibility of the alien's eventual removal, there were adequate and reasonable procedures to seek release pending removal, and there was an adequate factual premise for a conclusion that detention was necessary to prevent a risk of flight or threat to the community. *Id.* at 397. If an alien who is subject to a final removal order is entitled to an opportunity to seek release pending execution of the removal order, then an alien who is not yet subject to a final removal order should be accorded the same opportunity. As explained by Judge Katz in *Bouayad:*

> As the Third Circuit recognized in *Chi Thon Ngo,* due process demands an underlying justification for the detention of aliens. The petitioner in *Chi Thon Ngo* was an alien whose order of removal was final but who was still detained in the United States because his native country, Vietnam, refused to accept him. The court emphasized the need for an individualized evaluation of the petitioner's detention: "The process due even to deportable and excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight."
>
> * * *
>
> The interest affected by the mandatory detention provisions is not whether an alien may remain in this country, but whether the alien must be automatically detained while removal proceedings are pending. The Third Circuit's holding in *Chi Thon Ngo* clarifies that the issue of removability is distinguishable from the issue of

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

> detention. In *Chi Thon Ngo,* the petitioner was under a final order of removal; there was no question that he would have to leave this country when and if Vietnam agreed to accept him. However, the court found that due process still necessitated meaningful periodic reviews of the reasons for the petitioner's continued detention--namely whether he presented a risk of flight or a danger to the community.
>
> Admittedly, the petitioner in *Chi Thon Ngo* was unable to return to Vietnam and so could not simply end his detention by leaving this country .... However, where, as here, a petitioner contests whether he is removable under 8 U.S.C. § 1227, the option of ending detention by departing this country does not cure any constitutionality infirmity in the mandatory detention provisions. To hold otherwise would be to put the cart before the horse by requiring an alien who is subject to mandatory detention and not yet under a final order of removal to forego any challenges to the removal proceeding in order to secure his or her liberty.

74 F.Supp.2d at 475, 476.

In this case, Chukwuezi is pursuing a challenge to the fact of removability. He has been detained for approximately one year as a consequence of his challenge to removability. While it may be that he should not be released while he pursues his challenges, either because of factors such as the nature of his conviction or evidence that he poses a flight risk or danger to some person or the community, he should be afforded an opportunity to seek his release. Because § 1226(c) denies Chukwuezi such an opportunity, it is unconstitutional. Accordingly, Chukwuezi is entitled to be released unless the INS affords him a meaningful opportunity to be heard on the question of his release pending the outcome of the removal proceedings. [FN5] An appropriate Order is attached. [FN6]

FN5. Respondent is reminded of the admonition in *Ngo,* 192 F.3d at 398, and *Bouayad,* 74 F.Supp.2d at 477, that "grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens."

FN6. In light of this decision, there is no need to rule on Chukwuezi's pending motions for a temporary restraining order and for appointment of counsel.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, S.D. California.

Elena SIERRA-TAPIA, Petitioner,
v.
Janet RENO, Attorney General of the United States et al., Respondents.

No. 99-CV-986 TW(RBB).

Sept. 30, 1999.

Jan Joseph Bejar, San Diego, California, for Petitioner.

Samuel W. Bettwy, United States Attorney, San Diego, California, for Respondent.

AMENDED ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; TERMINATING CASE

WHELAN, J.

I. *Introduction*

***1** On May 13, 1999 Petitioner Elena Sierra-Tapia ("Petitioner"), proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is currently being detained by the Immigration and Naturalization Service ("INS") pursuant to the mandatory detention provision of Section 236(c) of the Immigration and Naturalization Act ("INA") [8 U.S.C. § 1226(c) ]. Petitioner seeks an order requiring the INS to discharge her from custody and to parole her into the United States during the pendency of her removal proceedings. For the reasons expressed herein, the court DENIES the petition.

II. *Background* [FN1]

FN1. The facts set forth in these paragraphs are undisputed and are taken largely from the petition and from the exhibits attached to the Government's return. The court also takes judicial notice of the records in the criminal case involving Petitioner, *United States v. Sierra Tapia,* No. 98-CR-1347 K(RBB) (S.D.Cal. Mar. 25, 1998).

Petitioner is a 49-year old native and citizen of Mexico who became a lawful permanent resident on June 20, 1990. At approximately 7:00 AM on March 25, 1998, Petitioner and her 10-year old daughter entered the United States from Mexico at the Tecate, California Port of Entry driving a 1977 Pontiac Ventura. Petitioner was the driver and her daughter the front-seat passenger of the vehicle.

While waiting at the primary checkpoint, a border patrol narcotics agent noticed that Petitioner appeared nervous and frightened. The officer referred the vehicle to secondary inspection where a search of the vehicle revealed 42.5 pounds of a green leafy substance that field tested positive for marijuana. Petitioner was taken into custody the same day and charged with two counts of knowingly and intentionally importing marijuana and possessing marijuana with intent to distribute. Petitioner was paroled into the United States during the pendency of her prosecution.

On October 6, 1998, a jury convicted Petitioner of both counts and the court sentenced her to a term of imprisonment. Petitioner was released on January 29, 1999 into the custody of the INS. The INS subsequently detained Petitioner and charged her with inadmissibility under INA § 212(a)(2)(A)(i)(II) [8 U.S.C. § 1182(a)(2)(A)(i)(II) ] on the basis of her controlled substance conviction.

The INS is currently detaining Petitioner without bond pursuant to the mandatory detention provisions of INA § 236(c) [8 U.S.C. § 1226(c) ]. Petitioner contends that her continued detention is unconstitutional and seeks an order requiring the INS to discharge her from custody pending the outcome of removal proceedings.

III. *Subject Matter Jurisdiction*

It is well-established that a federal court cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *Steel Co. v. Citizens for a Better Environ.,* 523 U .S. 83, ___, 118 S.Ct. 1003, 1013, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (quoting *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)). Accordingly, federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its]

existence ..." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977) (citations omitted).

***2** The INS commenced removal proceedings against petitioner on January 29, 1999. Judicial review is therefore governed by the permanent jurisdictional provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-132, 110 Stat. 3009-546 ("IIRIRA"); IIRIRA §§ 309(c)(1) & (a).

Respondent contends the court lacks jurisdiction to hear the writ pursuant to what the Supreme Court recently coined as "the unmistakable zipper clause" of INA § 242(b)(9) [8 U.S.C. § 1252(b)(9) ]. *See Reno v. American-Arab Anti- Discrimination Committee,* 525 U.S. 471, _____, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999) (dicta). That statute provides:

> (9) Consolidation of questions for judicial review
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). This court had occasion to interpret this statute in *Maldonado v. Fasano,* No. 99-CV-880 TW, 1999 WL 343423 (S.D.Cal. May 21, 1999), where the court held that INA § 242(b)(9) eliminated § 2241 habeas corpus jurisdiction for resident aliens challenging *final orders* of removal. *See id.* at *4-5 (emphasis added). The court held that "[t]o the extent judicial review is available under the immigration statutes, or is compelled by the constitution, such review exists only in the court of appeals ." *Id.* at *5.

*Maldonado* did not address the specific issue now before the court-whether the permanent jurisdictional rules of INA § 242 repealed § 2241 habeas jurisdiction for aliens challenging detention pending removal. In dicta, the decision suggested that INA § 242(b)(9) "may divest federal courts of jurisdiction to review interim administrative determinations, such as agency actions concerning bail and parole," *id.* at *4, but did not have occasion to resolve the issue. In *Richardson v. Reno,* 180 F.3d 1311 (11th Cir.1999), the Eleventh Circuit recently resolved this question against jurisdiction, holding that INA § 242(b)(9) completely revoked district court § 2241 habeas jurisdiction for all challenges, including challenges to detention pending removal.

The court agrees with *Richardson* and with its previous statements in *Maldonado* that the plain language of INA § 242(b)(9) divests district courts of § 2241 habeas jurisdiction over matters concerning executive detention. Finding that the statute applies, however, does not necessarily end the inquiry. With respect to congressional and executive control over immigration, the Supreme Court has stated:

> The power to exclude aliens, being a power affecting international relations, is vested in the political departments of the government, and is to be regulated by treaty or by act of Congress and to be executed by the executive authority according to regulations so established, except so far as the judicial department has been authorized by treaty or by statute, or is *required by the paramount law of the constitution.*

***3** *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 1904 n. 21, 48 L.Ed.2d 495 (1976) (quoting *Fong Yue Ting v. United States,* 149 U.S. 698, 713, 13 S.Ct. 1016, 1022, 37 L.Ed. 905 (1893)) (emphasis added). Thus, even where Congress does not authorize judicial review of actions concerning immigration, Congressional and executive power over immigration "is, of course, subject to judicial intervention under the paramount law of the constitution." *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952) (internal quotations omitted).

The question of whether INA § 242(b)(9) divests district courts of § 2241 habeas jurisdiction is a difficult one, implicating countless constitutional issues including the extent of Congressional authority over immigration and the jurisdiction over the lower federal courts. Despite the language of INA § 242(b)(9), statements in *Fong Yue Ting* and other Supreme Court decisions suggest that district courts may ultimately retain some limited constitutional habeas jurisdiction to challenge the validity of INS detention. The court will therefore examine the merits of Petitioner's arguments to see if she raises any colorable constitutional claims.

IV. *Discussion*

Petitioner does not dispute that the mandatory detention provisions of INA § 236(c) apply to her case and require the INS to detain her without bond or parole. [FN2] Her sole contention is that the denial of an individualized bond determination violates

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

principles of substantive and procedural Due Process.

FN2. Petitioner does not dispute that the Transition Period Custody Rules (TPCR) do not apply to her since the INS commenced removal proceedings after October 9, 1998.

In response, Respondent argues that the Petitioner's arguments lack merit because (1) Petitioner has no constitutional right to be paroled into the United States because she was apprehended upon entry to the United States; and because (2) even if the court reaches Petitioner's constitutional challenge, INA § 236(c) is constitutional. The court will address each of the parties' arguments in turn.

a. *Petitioner's Status as an "Arriving" Alien*

Respondent argues that Petitioner has no constitutional right to be paroled into the United States pending her removal proceedings because the federal government took her into custody as an alien entering the United States. Respondent argues that Petitioner's status as an "arriving" alien significantly diminishes her constitutional status and eliminates any constitutional entitlement she may have had to an individualized bond determination. In response, Petitioner argues that she should not be considered an "arriving" alien because she had a long period of residence in the United States prior to her March 1998 arrest.

Petitioner's arguments are undermined by the Supreme Court's decision in *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (*"Mezei"* ). The alien in *Mezei* lived in the United States for 25 years until he took a 19-month trip to Hungary to visit a dying relative. Upon return to the United States, the Attorney General detained and confined him and sought to exclude him as a threat to national security. When no country would take him, the government confined him at Ellis Island for over 21 months. Mezei argued that his continued detention violated due process.

***4** The Supreme Court rejected these arguments by drawing the sharp distinction between "aliens who have once passed through our gates, even illegally," who are entitled to Due Process protections, and those "on the threshold of initial entry," who "stand[ ] on a different footing." *Id.* at 212, 73 S.Ct. at 629. Those in the latter category, the Court declared, are entitled to virtually no Due Process protection. "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* (quoting *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 544, 70 S.Ct. 309, 313, 94 L.Ed.2d 317 (1950)). As for Mezei's continued detention at Ellis Island, the Court held that it did not "deprive him of any statutory or constitutional right." *Id.* at 215, 73 S.Ct. at 631.

More recently, the Ninth Circuit reaffirmed *Mezei* and held that an alien entering the United States had no constitutional right to be free from detention, even for an extended period of time. *Barrera-Echavarria v. Rison,* 44 F.3d 1441, 1449 (9th Cir.1995) (en banc). The court noted the long line of Supreme Court cases recognizing the validity of detaining aliens pending deportation and stated that cases such as *Mezei* suggest that "excludable aliens simply enjoy no constitutional right to be paroled into the United States, even if the only alternative is prolonged detention." *Id.* at 1450. [FN3]

FN3. The Ninth Circuit in *Barrera-Echavarria* suggested that the *Mezei* holding and reasoning may not apply to cases of "indefinite" or "permanent" detention. 44 F.3d at 1450. This case, however, does not implicate concerns of indefinite detention since there is no suggestion that Petitioner cannot return to Mexico if the INS orders her removed from the United States.

Although recent amendments to the federal immigration statutes have eliminated the statutory distinction between "exclusion" and "deportation," the constitution continues to draw a distinction between resident aliens and aliens who seek admission to the United States. [FN4] Under *Mezei,* the government may automatically confine those in the latter category, such as Petitioner, without offending the constitution.

FN4. The Supreme Court in *Rosenberg v. Fleuti,* 374 U.S. 449, 462, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) held that "an innocent, casual, and brief excursion" by a resident alien into a foreign country would not convert the returning alien into an "excludable" alien under the INA. However, the BIA recently held that Congress legislatively overruled the *Fleuti* doctrine when it enacted IIRIRA. *In re Collado,* Int. Dec. 3333, 1998 WL 95929 (BIA 1998).

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Although it is unclear how long Petitioner was in Mexico before attempting to reenter the United States, it is undisputed that Petitioner was apprehended at the border in March 1998 while attempting to smuggle 42.5 pounds of marijuana into the United States. Petitioner's apprehension for a criminal act at the border transmuted her constitutional status from a permanent resident into an arriving alien. [FN5] The government can therefore confine Petitioner without a bond hearing notwithstanding the fact that she previously enjoyed a long period of permanent residence in the United States. *Mezei,* 345 U.S. at 215, 73 S.Ct. at 631.

FN5. Petitioner has been under the custody and supervision of the federal government continuously since her March 1998 arrest notwithstanding that she was paroled into the United States during criminal proceedings. *Cf. Carlson v. Landon,* 342 U.S. 524, 547, 72 S.Ct. 525, 538, 96 L.Ed. 547 (1952) ("When a prisoner is out on bond he is still under court control, though the bounds of his confinement are enlarged.").

b. *Petitioner's Constitutional Challenge to INA § 236(c)*

Even assuming Petitioner enjoyed the full Due Process protections afforded resident aliens, the court nonetheless finds that her constitutional challenge to the mandatory detention provisions of INA § 236(c) lacks merit. Petitioner argues that "[i]n creating an irrebuttable presumption that all non-citizens with certain convictions require mandatory detention, the INS is depriving individuals of their liberty in violation of substantive and procedural due process." (*See* Pet. at 7). Respondent counters by arguing that Petitioner has failed to cite any authority supporting her position that she is constitutionally entitled to bail pending removal proceedings. (*See* Return at 7).

1. *Substantive Due Process--Legal Standard*

***5** Federal courts have long recognized that the Due Process Clause prevents governmental interference with those fundamental rights "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325-26, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). The simplest example of such a right is the freedom from bodily restraint, a right so fundamental that it "has always been at the core of the liberty protected by the Due Process Clause ..." *Foucha v. Louisiana,* 504 U.S. 71, 80, 118 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992); *accord United States v. Salerno,* 481 U.S. 739, 750, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1989) (noting "the individual's strong interest in liberty."). Once government action infringes upon a "fundamental" right, the court will strike down the offending act or statute unless the infringement is narrowly tailored to serve a compelling governmental interest. *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) (*"Flores"* ). If the right at issue is not "fundamental," however, the court will uphold the act or statute so long as it is rationally related to a legitimate governmental interest. *Washington v. Glucksberg,* 521 U.S. 702, 728, 117 S.Ct. 2258, 2271, 138 L.Ed.2d 772 (1997); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 487-88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

The Supreme Court has admonished federal courts that a due process analysis must always "begin with a careful description of the asserted right, for "[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." ' *Flores,* 507 U.S. at 302, 113 S.Ct. at 1449 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)) (alteration in original).

2. *Defining the Right*

Petitioner contends that INA § 236(c) is unconstitutional, both on its face and as applied to her, because it implicates her most basic and vital right to freedom from physical restraint or confinement. (*See* Pet. at 8-11). She contends that mandatory detention deprives her of the opportunity to show that she is neither a flight risk nor a danger to the community.

The court disagrees with Petitioner's definition of her alleged liberty interest and finds her situation analogous to that presented in *Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999). The alien in *Parra* was convicted of an aggravated felony and detained by the INS pending removal from the United States. Parra, like Petitioner, brought a § 2241 habeas action contending that the mandatory detention provisions of INA § 236(c) violated his right to liberty guaranteed by Due Process. The court rejected this argument, stating:

> Persons subject to § 1226(c) have forfeited any *legal* entitlement to remain in the United States and have little hope of clemency. Before IIRIRA bail was available to persons in Parra's position as a corollary to the possibility of discretionary

relief from deportation; now that this possibility is so remote, so too is any reason for release pending removal. Parra's legal right to remain in the United States has come to an end. An alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.

*6 *Parra,* 172 F.3d at 958 (emphasis in original). Since Parra had virtually no chance of remaining in the United States at the conclusion of his removal proceedings, the court held that Parra's due process interest was not "liberty in the abstract, but liberty *in the United States* by someone no longer eligible to live at liberty in this country but eligible to live at liberty in his native land." *Id.* (emphasis in original). [FN6]

FN6. The Seventh Circuit also noted that Parra's case did not present problems of indefinite confinement or detention since the alien's native land, Mexico, accepts return of its citizens. *Parra,* 172 F.3d at 957.

The court finds the reasoning of *Parra* persuasive. The decision recognizes that detained aliens with little chance of remaining legally in the United States lack a liberty interest cognizable under the Due Process Clause. The strength of an alien's due process liberty interest therefore depends on the likelihood that the alien will be permitted to legally remain in the United States after the conclusion of removal proceedings. Where an alien commits an aggravated felony, she renders herself immediately removable from the United States and forfeits any discretionary form of relief from removal.

Here, Petitioner has made no showing that she is likely to remain in the United States after the close of her removal proceedings. A jury found Petitioner guilty of knowingly importing 42.5 pounds of marijuana into the United States-an extremely serious controlled substance offense that easily qualifies as an "aggravated felony" under the INA. *See* 8 U.S.C. § 1101(a)(43)(B) ("The term 'aggravated felony' means ... illicit trafficking in a controlled substance ..."); 21 U.S.C. § 812, Sch. I(c)(10) (definition of controlled substance includes marijuana); 21 U.S.C. § 802(16); *cf. United States v. Estrada-Torres,* 179 F.3d 776 (9th Cir.1999) (holding that violation of California statute prohibiting importation of marijuana was properly classified as "aggravated felony" under INA § 101(a)(43), allowing for sentencing enhancement). Petitioner's felony conviction thus renders her ineligible for the only form of discretionary relief she seeks, "cancellation" of removal under INA § 240A [8 U.S.C. § 1229b]. *See* 8 U.S.C. §§ 1229b(a), 1229b(b)(1)(C) (cancellation of removal unavailable to aggravated felons). [FN7] Even assuming Petitioner was eligible for some form of discretionary relief, she has made no showing that she will likely receive it, particularly in light of the serious nature of the crime for which she was convicted . [FN8] The court therefore holds that Petitioner's Due Process liberty interest is far less from "fundamental," and is no stronger than that of the alien in *Parra.*

FN7. Although the INS initially charged Petitioner with removability due to her controlled substance conviction, it appears that the INS has realized that her marijuana importation offense also qualifies as an "aggravated felony" under the INA. (*See* Pet. at 10:16-19). The immigration judge's April 21, 1999 notes indicate doubt as to whether Section 240A cancellation is available to Petitioner. (*See* Resp. Exh. 22).

FN8. Petitioner also contends that she seeks to avoid removal from the United States by seeking protection of Deferral of Removal pursuant to the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. ( *See* Traverse at 4:14-18). Petitioner fails, however, to offer any specific factual allegations suggesting that she may qualify for this form of relief from removal.

3. *Applying the Scrutiny*

Having found that Petitioner has no fundamental right to liberty within the United States during her removal proceedings, the court must apply the more deferential "rational basis" test. *Williamson,* 348 U.S. at 487-88, 75 S.Ct. at 464. Rational basis requires even more deference where, as here, the challenged statute concerns immigration. The Supreme Court has bestowed Congressional immigration statutes with the strongest presumption of constitutional validity. In no other area of law has the Court employed more

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

sweeping and unequivocal language suggesting that legislative and executive authority over immigration is virtually plenary. The Court has stated that matters involving immigration are "so exclusively entrusted to the political branches of government as to be largely immune *from judicial inquiry or interference. Harisiades v. Shaughnessy,* 342 U.S. 580, 588-89, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952). The principle that formulation of policies pertaining to immigration is entrusted exclusively to Congress "has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government." *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 743, 98 L.Ed. 911 (1954); *accord Flores,* 507 U.S. at 305-306, 113 S.Ct. at 1449 ("[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Over no conceivable subject is the legislative power of Congress more complete.") (internal citations omitted). These oft-repeated general principles guide judicial review of any immigration statute [FN9] and require the court to uphold the statute so long as it "meet[s] the (unexacting) standard of rationally advancing *some* legitimate governmental purpose ..." *Id.* at 306, 113 S.Ct. at 1449.

FN9. The Supreme Court has only twice struck down congressional immigration statutes. *See INS v. Chadha,* 462 U.S. 919, 103 S .Ct. 2764, 77 L.Ed.2d 317 (1983) (congressional statute authorizing one House of Congress to "legislatively veto" Attorney General's decision to suspend deportation in individual cases violated separation of powers); *Wong Wing v. United States,* 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (congressional statute subjecting Chinese alien illegally residing in the United States to imprisonment and hard labor held unconstitutional where statute did not require judicial finding of guilt).

*7 INA § 236(c) clearly passes constitutional muster for at least three reasons. First, Congress could rationally have believed that aliens who commit aggravated felonies present a danger to the community. As one court noted, aliens involved in drug trafficking pose a significant threat the society's health and welfare. *Diaz-Zaldierna v. Fasano,* 43 F.Supp.2d 1114, 1120 (S.D.Cal.1999) (Moskowitz, J.).

Second, Congress could rationally believe that aliens facing removal are likely to abscond if released on bail. The *Parra* decision, for example, cited Department of Justice statistics indicating that 90% of aliens facing removal from the United States abscond once released on bail. 172 F.3d at 956 (citing 62 Fed.Reg. 10,312, 10,323 (1997)). The Seventh Circuit indicated that this rate exceeds the abscond rate for criminal defendants released on bond. *Id.* at 958.

Third, Congress could rationally have concluded that denying bail to an alien certain to face removal from the United States eliminates the incentive to indefinitely prolong removal proceedings. An alien released on bail with little chance of remaining in the United States has a strong incentive to delay administrative proceedings by filing frivolous motions and appeals. Placing such an alien in mandatory detention reduces this incentive, furthering congressional policy of expeditiously removing criminal aliens from the United States.

The court therefore concludes that INA § 236(c) comports with Due Process *and does not offend the constitution.* [FN10]

FN10. Since Petitioner lacks a substantive due process liberty interest, her procedural due process arguments require no comment. *See American Manuf. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, ____, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999) (citations and internal quotation marks omitted) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty. Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process."); *Sargeant v. Dixon,* 130 F.3d 1067, 1070 (D.C.Cir.1997) ("Absent an underlying property or liberty interest, therefore, one has no entitlement to procedural due process and hence no 'right to be heard." ').

4. *Applicability of The* Salerno *Framework*

Petitioner urges the court to apply the Due Process framework for pretrial criminal detention articulated by the Supreme Court in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) . *Salerno* involved a challenge to provisions of the Bail Reform Act that authorized pretrial detention of

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

a criminal defendant upon a showing that the defendant posed a danger to the community. The Court held that evaluating the statute's constitutionality required a two step process. First, the court must determine whether the statute advances a regulatory or punitive purpose. *Id.* at 746, 107 S.Ct. at 2101. Second, if the statute is deemed regulatory it will be upheld unless it appears "excessive" in relation to its purpose. *Id.*

Applying this framework to the Bail Reform Act, the Court upheld the statute reasoning that it had a regulatory purpose and was narrowly tailored to prevent criminal defendants from committing additional crimes. The Court emphasized that the statute included numerous procedural safeguards, including a "full- blown adversary hearing" that required the government to show by "clear and convincing evidence" that a criminal defendant's pretrial release would pose a danger to the community. *Id.* at 749-51, 107 S.Ct. at 2103.

Petitioner and Respondent cite district court cases that have evaluated INA § 236(c) under *Salerno* with differing results. Petitioner relies on *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998), where the court held that INA § 236(c) had a regulatory purpose but was unconstitutionally "excessive" because it removed the Attorney General's discretion to make individual determinations. *Id.* at 1282. Respondent, on the other hand, cites *Diaz-Zaldernia v. Fasano,* 43 F.Supp.2d 1114 (S.D.Cal.1999), where the court held that INA § 236(c) passed constitutional muster because mandatory detention pending removal was a regulatory, reasonable, and nonexcessive means to carry out congressional immigration policy. [FN11]

FN11. See also *Galvez v. Lewis,* 56 F.Supp.2d 637, 1999 WL 547926 (E.D. Va. Jul 7, 1999) (following *Diaz-Zaldernia* and upholding INA § 236(c)); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999) (following *Martinez* and holding INA § 236(c) unconstitutional).

***8** If the court accepted Petitioner's argument that *Salerno* provided the proper analytical framework, could it conceivably agree with the *Martinez* court and hold INA § 236(c) unconstitutional. In *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), the Supreme Court struck down a Louisiana state law that required criminal defendants acquitted by reason of insanity to be automatically committed to state psychiatric institutions, regardless of whether they were insane at the time of acquittal. Relying on *Salerno,* the Court found the statute constitutionally defective because it placed no durational limitation on confinement and did not require the state to show that the person was insane or dangerous. *Id.* at 82-83, 112 S.Ct. at 1786-87.

Assuming the *Salerno* reasoning applied to this case, INA § 236(c) fares even worse than the Louisiana statute struck down in *Foucha.* The statute mandates, automatically and without exception, the detention of any alien convicted of an aggravated felony or a serious controlled substance violation. It does not allow an alien to prove that she is neither a flight risk nor a danger to the community. It summarily denies bail for several broadly defined classes of aliens and precludes the Attorney General from consideration of individual circumstances. INA § 236(c) is, therefore, clearly excessive under *Salerno* and unconstitutional under *Foucha.*

However, the court respectfully disagrees with the assumption made by *Martinez* and *Diaz-Zaldernia:* that *Salerno* provides the appropriate analytical framework for evaluating the constitutionality of INA § 236(c). As *Salerno* recognized, detaining a presumptively innocent criminal defendant before a judicial finding of guilt deprives the person of a fundamental due process right to liberty, triggering the highest judicial scrutiny. "In our society liberty is the norm," the Court declared, "and detention prior to trial or without trial is the carefully limited exception." *Salerno,* 481 U.S. at 755, 107 S.Ct. at 2105. The Court's reasoning in *Salerno* therefore *presumes* the existence of a fundamental substantive Due Process liberty interest. If the party challenging detention has no such due process interest, the *Salerno* framework should not apply.

The analysis in *Martinez* and *Diaz-Zaldernia* suffers from failing to perform the most crucial step in the substantive due process calculus-precisely defining the right infringed by government action. *Flores,* 507 U.S. at 302, 113 S.Ct. at 1449. An alien who will almost certainly face removal does not stand on the same footing as a criminal defendant who has not yet been found guilty of a crime. *See Parra,* 172 F.3d at 958. Unlike the defendant in *Salerno,* Petitioner has already been convicted for an aggravated felony, an offense that virtually guarantees her removal from the United States. The court therefore holds that the analysis in *Salerno* does not apply where, as here, the alien lacks a cognizable fundamental Due Process interest under the Fifth Amendment.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

V. *Conclusion and Order*

***9** For the foregoing reasons, the court DENIES the petition for a writ of habeas corpus. The Clerk of Court shall close the district court case file.

IT IS SO ORDERED.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS A. PEREZ,** | : | |
| **Petitioner** | : | **No. 1:CV-00-1960** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **JOHN ASHCROFT,** | : | |
| **Respondent** | : | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 26th day of March, 2001, she served a copy of the attached

**RESPONSE TO HABEAS CORPUS PETITION**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

Carlos A. Perez
A31-221-000
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

[signature]
KATE L. MERSHIMER
Assistant U.S. Attorney