

ORIGINAL

**United States District Court**
**Middle District Of Pennsylvania**

| | | |
|---|---|---|
| Carlos A. Perez, | : | Docket No. :00-CV-01960 |
| Petitioner, | : | |
| | : | Civil Action |
| **v.** | : | |
| | : | Judge Yvette Kane |
| John Ashcroft, et. al., | : | |
| Defendants. | : | |

FILED

APR 0 9 2001

_____ DEPUTY

### Opposition to Respondent's Response to Habeas Corpus Petition

Petitioner pro se persons and respectfully submits this motion.

Petitioner urges this Honorable Court to construe this motion liberally and cure all procedural errors as adjudged by the United States Supreme Court to States and Federal Court in **Haines v. Kerner, 404 U.S. 519, 520 (1972).**

This is a response in opposition to the Respondent's "Response to Habeas Corpus Petition". The petitioner filed a habeas corpus petition, brought under 28 U.S.C. § 2241. The petitioner was charge by the Immigration and Naturalization Service, hereinafter I.N.S., for having committed, what I.N.S. interprets as an aggravated felony 18 U.S.C. § 371, conspiracy. **NOT 18 U.S.C. § 1956, which is launderi** money, again only 18 U.S.C. § 371, conspiracy[1], nothing else.

---

[1] 18 U.S.C. § 371. Conspiracy to commit offense or to defraud United States.    If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any other agency thereof in any manner or for any purpose and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

As stated in 18 U.S.C. § 317, all information refers to acts committed under this title shall be fined and imprisoned under such said title, NO WHERE in this title does is state that anyone should refer to another statute to justify their allegations, as the I.N.S. is always referring to 18 U.S.C. § 1956, laundering of money, which is just the typical rhetoric that is used to give false pretenses of other parties viewing their filings, and since they're a Government agency, no one will question such allegations or legitimacy of a Federal agency.

The petitioner has several issues in his Appeal to the Board of Immigration Appeals, hereinafter B.I.A., and the fact that the petitioner has several avenues for relief, that fact only will give the I.N.S. an excuse to hold the petitioner as long as they wish.  Rather than admitting this fact, the I.N.S. tries to state that the petitioner's only actions in the B.I.A. are his Convention Against Torture Claim, hereinafter C.A.T. Claim, instead of telling the truth, knowing that the petitioner has three main issues with his Appeal to the B.I.A., and this will only prolong the detention which the I.N.S. does not wish to admit that they will be detaining the petitioner for an undisclosed amount of time, which shows a sign of the unconstitutional detention.

The petitioner understands that some detention is necessary in the beginning for the I.N.S. to make an individualized determination of the persons risk of flight and threat to the community.  The petitioner also understands that the I.N.S. detention is not indefinite, nor is life itself indefinite, but SOMEONE needs to make some common sense judgements to the detention time involved in a case as to whether 1, 2, or 3 years is too long to be detained

3

unconstitutionally.  Obviously no length of time is unreasonable
to the I.N.S., because they are not the people being incarcerated
in a prison.

### Statement of the Case

The petitioner, Carlos A. Perez, was born April 5, 1966, in
Bogota, Columbia, South America.

On February 13, 1972, the petitioner entered the United States
Legally as an Immigrant through Miami, Florida, with his Grandmother
his legal guardian, when he was 6 years of age.  Her name is
Carmelina Perez, and she herself is a naturalized U.S. Citizen as
well as nearly everyone in his family throughout New York State.
He was raised with his Brother, who is a U.S. Citizen, his Aunts,
his Uncles, and his cousins, who are all permanent legal residents
or naturalized U.S. Citizens.

The petitioner was school completely in the United States,
with no knowledge of his Country. **ALL** family ties are here in the
United States, nothing in Columbia.

On January 28, 1997, the petitioner went to trial and was found
guilty on Count II, Conspiracy, in violation of 18 U.S.C. § 371,
with all remaining Counts dismissed.

On June 17, 1997, the petitioner was sentenced to 60 months
incarceration, and 36 months supervised release.

On August 24, 2000, the petitioner completed the sentence of
52 months with good time credit.

On September 5, 1997, the I.N.S. filed an Immigration detainer,
Notice of Action.

On April 27, 1998, the I.N.S. began the Initiate Process by

4

filing a form I-213; a record of a Deportable Inadmissable Alien.

On October 28, 1999, the I.N.S. served the petitioner with another Notice to Appear for violation of section 237(a)(2)(A)(iii), as defined in section 101(a)(43)(A) of the act; and Title 18 U.S.C. § 1956; or Title 18 U.S.C. § 1957. **NOTE**, this is clearly a false pretense being showed by the I.N.S., to give the impression that the petitioner is guilty of charges that he is clearly not guilty of such charges as seen by the Judgement of Commitment, which is labeled as <u>Exhibit "A"</u>. Only 18 U.S.C. § 371, nothing else

Also it should be noted that this crime that is alleged to have taken place, occurred by the Federal Government filing a complaint in the Northern District of California, on September 30, 1992, which is extremely important because of the issue of his eligibility for the 212(c) waiver with respects to retroactivity, and that fact is in front of the B.I.A., should make this court understand that the petitioner's case could be pending for quite some time becasue he has many avenues to contest with the courts, rather than the false pretense given by I.N.S., by saying the only issue in front of the B.I.A. is the petitioner's C.A.T. Claim, which is false, and shows the petitioner will be incarcerated well beyond the Constitutional time limit by the I.N.S.

Most importantly of all this Honorable Court should strongly consider the fact that the petitioner has no violence in his history nor does he pose any threat or danger to the community, which also can be seen by his clear conduct while incarcerated.   Also the petitioner has only one concern, and that is to take care of his Grandmother who is now 83 years old, and needs his help.

**Opposition to Respondent's "Statement of the Case"**

The petitioner is going to argue the merits of the claims by the I.N.S., and will always refer <u>only</u> to the document by the U.S. Attorney which that information was supplied by the I.N.S., and in no way a direct conflict with the U.S. Attorney's Office, but an issue with the I.N.S., and the information that will be contended will be from the March 26, 2001, "Response To Habeas Corpus Petition", filed by Assistant U.S. Attorney, Kate L. Mershimer.  And this document will be listed as <u>Exhibit "B"</u>.

First matter that should be noted by this Honorable Court was the fact that after consulting and viewing these filings by the petitioner something was brought to his attention, that in all filings he has inadvertently misspelled his native country's name, Columbia, instead of the proper spelling "Colombia"  Which as seen in all previous filings was done by accident, even in the recent part of this Motion, but as seen also by the Assiatant U.S. Attorney, this matter was also misspelled.  This fact is important because it shows that most people accustomed to this country would misspell such a name, but not someone who is close to his country, only someone who has spent his whole life in this country, not Colombia.

On page 2 of the "Response To Habeas Corpus Petition", hereinafter "Response", the statement says on line 8 that he was convicted of Conspiracy to Launder Money, but in fact he was <u>only</u> found guilty of 18 U.S.C. § 371, Conspiracy, <u>not</u> 18 U.S.C. § 1956.

On page 2, line 12, of the "Response", it states that the petitioner was convicted of an aggravated felony, but unfortunately

the petitioner was not convicted of an aggravated felony according

to the statutes that were in place in 1992 when the actual crime

was to have taken place.  The crime that the petitioner was

found guilty, was Conspiracy, and in  determining the level of

the crime was the amount involved which was $53,000, and at the

time of the alleged crime, the amount that constituted an aggravated

felony was to be over $100,000, not below, only over that amount.

After 1996 the law was changed to move the level down to make

it an aggravated felony when the amount involoved was above

$10,000, but this was not in effect at the time the alleged crime

took place by the petitioner in 1992.  And now knowing this fact

no layman could say that the petitioner is an aggravated felon,

because the law did not constitute such a level in 1992.

On page 2, line 13, of the "Repsonse", the I.N.S. claims that

the petitioner admitted to the factual allegations, but in fact

according to the transcripts from the video hearing dated August

2,2000 that took place in Allenwood Prison, and Philadelphia, Pa,

hereinafter "Ransome-Transcript",  did in fact NOT admit to anything

as seen on page 31, lines 21 through 25, and continuing on page 32,

lines 1 through 12, clearly asked the petitioner whether he was

convicted of "Money Laundering".  And the petitioner stated that

his Brother was convicted of Money Laundering, and CLEARLY Stated

that "Yes, he did", as seen on page 32 line 10 and again on line 12.

This  is seen on the "Ransome-Transcript", which is listed as

Exhibit "C".

Therefore the statement in the "Repsonse" by the I.N.S. that

the petitioner has admitted to such money laundering allegations

is sincerely false, as seen by the true transcripts from the

7

"Ransome-Transcripts", which are not anything but the facts of what took place in court that day of August 2, 2000, and the I.N.S. should not be allowed to say anything but the facts.

On page 2, line 20 of the "Response", the I.N.S. states that the immigration judge concluded that the petitioner "in no way" demonstrated that he likely would be tortured by Colombian Officials. Unfortunately the petitioner stated several times as seen in the transcripts of "Ransom-Transcripts" listed as <u>Exhibit "C"</u>, that he would be tortured by Colombian people who are involved with the Government, and control the Government, but are not actually employed by the Government, but surely have the proper influence and the necessary means to take control of the petitioner as seen in <u>Exhibit "C"</u>, on page 24 line 16 through page 30, line 8, also as seen on page 33, line 10, through page 33, line 24.

<u>One of the most important issues</u>, is on page 2, line  21 of the "Response", the I.N.S. states that the Immigtaion Judge says:

> That Perez was as likely, if not more likely, to be injured if he stayed in the United States due to his various criminal activities.

According to the Oral Decision of the Immigration Court, that is dated August 2, 2000, hereinafter "Oral Decision", states the above quote on page 8, lines 5 and 6, listed as <u>Exhibit "D"</u>, and the <u>I.N.S. is stating that this quote is by the Judge</u>, but it is by the Government's counsel, as anyone can clearly see on page 8, but also read lines 4 through line 6.   The exhibit shows that the Government's Counsel is stating that the Petitioner would be more likely to have as much, if not more, danger of being harmed in the United States as he does if returned to Colombia, <u>this quote</u>

8

<u>was made by the Government's Counsel, not the Judge.</u>

**Opposition to Respondent's "Question and Argument"**

On page 3, line 2, the I.N.S. states that "BIA with a decision
expected any day", regarding the petitioner's appeal, and the I.N.S.
is trying to say that anyday the B.I.A. will hand down a decision
on the petitioner's appeal, but it has been shown in previous
cases that the B.I.A. will take sometimes as long as 9 months or
more to hear the case, and might even require to have more time
for such things as evidentiary hearings, etc.  Now how can the
I.N.S. say that will happen any day, they simply can not knowingly
state such a thing as this, unless they are trying to give false
information, which everyone knows the I.N.S. would not supply
any false or misleading information.

On page 3, line 5, the Government trys to ask a question of
whether or not the 8 U.S.C. § 1226(c) is constitutional, and
the Government is relying on the information supplied by the I.N.S.,
which only supplies information on the Seventh Circuit that has
upheld the Constitutionality of 1226(c), and supplied one case
law from the Eleventh Circuit, totalling 2 cases supporting the
constitutionality of the § 1226(c), and the additional cases noted
on page 4, starting at line 12 through line 24 give various cases
that regard to the Constitutionality of § 1226(c), but it is very
confusing because the cases listed from line 12 through line 24
are not in favor of the Constututionality of § 1226(c), as noted
in the last case, <u>Chukwuezi v. Reno</u>, which the petitioner knows
the case of <u>Chukwuezi</u>, and will be attached as <u>Exhibit "E"</u>.  In

9

the case of <u>Chukwuezi</u>, the Judge noted:

> For example, in **Parra**, the Seventh Circuit relied
> upon the fact that the petitioner conceded that he was
> a removable alien because of his conviction of aggravated
> sexual assualt.  ....In **Galvez**, the petitioner was an
> illegal alien with a drug conviction.  ....In **Diaz-**
> **Zaldierna**, the petitioner had been convicted of possession
> of crack cocaine,....  In this case, unlike **Parra**,
> **Chukwuezi** does not concede that his conviction requires
> his removal from the United States.  Unlike **Galvez**,
> **Chukwuezi** is not an illegal alien in this country; he
> has attained lawful permanent residence status.  And
> unlike **Diaz-Zaldierna**, **Chukwuezi** does not stand convicted
> of a drug offense.  Because the rationale of **Parra**,
> **Galvez**, and **Diaz-Zaldierna** were so linked to the factual
> settings of those cases, their holdings are unpersuasive
> here.

Since the Judge stated that the cases were unpersuasive in his

Court because the facts of their cases had nothing in common with

the facts of the case in **Chukwuezi**, therefore the constitutionality

of § 1226(c) is surely unconstitutional.

Futhermore, the mere fact that the I.N.S. states that it is

not unconstitutional and most courts have found that it is

unconstitutional should make this Honorable Court question the

validity of all of I.N.S.'s information supplied to the Assistant

U.S. Attorney's Office.  Moreover since this circuit has held that

the § 1226(c) is unconstitutional, that is what should regulate

this Honorable Court, not what other circuits have done, but more

importantly what has happened in this Honorable Court's Circuit.

As  noted on page 5, line 1 through line 3, the I.N.S. information

trys to implicate that the previous information lead one to believe

that the detention was constitutional, but in no sense of the term

was the cases cited, were they saying that it was constitutional,

and it specifically stated  in the majority that it was unconstitu-

tional, as seen in the "Response" from the Government.  The Courts

should consider a very definite statement by Judge Weis remarked in

the case of <u>Martinez</u>, where he stated:

> "[i]t overworks legal fiction to say that' one is free
> in law when by the commonest of common sense he is
> bound".... It is similarly unrealistic to believe that
> these INS detainees are not actually being "punished"
> in some sense for their past conduct.

One can only feel that the strong words by Judge Weis is very

true, and that an I.N.S. detainee is being punished for his past

conduct, and that in itself makes the § 1226(c) unconstitutional

## Opposition to Respondent's "Argument A"

On page 5, line 5, of the "Response", it is stated that the

mandatory detention cannot be viewed in a vacuum.  This Honorable

Court should really not view the facts supplied by I.N.S. in a

vacuum, such as the statement of the B.I.A. making their decision

any day, and that the § 1226(c) is constitutional, and the petitione

could carry on about what should not be viewed in a vacuum, but

the courts understand the point.

On page 5, line 7, of the "Response", states that Section 1226(c)

is but one of several pieces of legislation collectively designed

to accelerate the removal process for criminal aliens.  All parties

should agree that the process for criminal aliens is not a swift

process, and there is nothing to accelerate the process except the

method of District Court, and this Honorable Court should note

according to past I.N.S. proceedings the "Collective Legislation",

has not given speed to any process concerning criminal aliens, or

so many aliens would not be seeking the most common method of a

habeas corpus, as this Honorable Court can easily understand the

increase has surely made their work loads incredibily burdened.

As seen on page 6, line 1 starts out by stating that the <u>IIRIRA demands the detention of all criminal aliens from start to finish of the administrative removal process without an individualized assessment on dangerousness or flight risk.</u>  How much more wrong could a statement be then as seen here in the "Response", that the IIRIRA says that no one has a right to be looked at on an individual basis.  Why doesn't all Government Courts put all people charged with everything from jaywalking to murder in jail, simply understood is because  people having committed jaywalking doesn't constitute imprisonment, just as certain aliens do not constitute imprisonment. Congress would never say that all people charged of all crimes should be imprisoned.  Then people receiving speeding tickets, parking tickets, even civil matters, maybe even people in divorce court maybe imprisoned if I.N.S. would be in charge, because the IIRIRA simply states that **ALL** people will be detained.  Therefore no one could be released under these crazy and absurd rules, and soon Congress will say that in effect it is Unconstitutional, as this Country evolves, as seen in previous areas of law, but regardle of when Congress does make such statements, this court should take upon themselves to state that it is currently Unconstitutional to hold the petitioner without some type of relief.

### Opposition to Respondent's "Argument B"

On page 6, line 15, the "Response", states that:

> Questions of immigration and nationality is tied to
> Congress' constitutional authority and inherent
> sovereign powers.

Of course Congress has the power to hand down, to any Government

12

agency, the ability to govern any such rules and regulations.  But in retrospect to this matter, at what point, when an agency is abusing and misusing such powers, does the District Courts step in and stop such nonsense.  Congress would never give a power to an agency that allows them to diliberately abuse and misuse their power

The main problem with Congress giving such power to the I.N.S. is the simple fact that there is no repercussion for such abuse and misuse of powers within the I.N.S.  All other Government agencie have rules and regulations that they must adhere to within, or be subject to penalties.  What does an alien do when I.N.S. diliberatel abuses their power ?... NOTHING, I.N.S. has too much power, and has literally snubbed their nose at the District Courts.  There has been known cases where I.N.S. abuses their power, and a Judge will ask for a "Show Cause" response, and I.N.S. will ignore the Courts, and the Courts just grant another 30 days to "Show Cause".  There has been several cases that "Show Causes" were not submitted to the Court for more than 6 months, and that is snubbing their nose at these Honorable Courts.  (If the Courts wish to look into this fact look in the E.D.N.Y. in Cinquemani v. I.N.S., where they were ORDERED to "Show Cause" in April of 2000, and as of February 2001, there had not been a complied response.)

Futher on in page 6, line 16, the "Response", states that:

> Because the responsibility for formulating immigration policies is "exclusively entrusted to the political branches of government", such policy choices are "largely immune from judicial inquiry or interference"

Merely that Congress gave an agency the power to enforce rules and make such rules, does not allow an agency to act God like, in any sense, and this raises the question of such abusive power, and

13

brings to light the I.N.S.'s mentality of Holiness.  And such recent problems, and rulings by this District and other conscious Judge's has brought about the inquiry by Congress to the Constitutional issues of these matters, and that alone means, "Something smells in Denmark", as the saying refers that something is wrong within the I.N.S.

On page 7, line 1, the I.N.S. refers to <u>Wong Wing v. U.S.</u> from **1896** and a case from **1952**, which states:

> "Detention is necessarily a part of this deportation procedure.  Otherwise, aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings."

The I.N.S. is quoting a case from **1896**, from so long ago, we would hope this country has evolved beyond the days when this was quoted, especially if one looks at the time frame from 1896 to 1952, when we allowed slavery and people were hung if thought to be witches and so forth.  The petitioner is certain we have come farther than this particular case law quotes.

Futhermore, the statement that aliens would have the opportunity to hurt the U.S. during the pendency of ones deportation proceedings, is again without an individualized analysis of the aliens situation. Has any Honorable Court taken the time to honestly look at this quote, because isn't there a punishment for when anyone  commits a new crime, whether they are an alien or not, and just because a person is an alien doesn't mean he wishes to commit a crime and go back to a prison.  This is why all states adn our Federal Government has a program called supervised release.

On page 7, line 15, the "Response", states:

> This is a critical aspect of the plenary power doctrine.
> The Courts should not revisit the wisdom of either
> Congress' desire to effect a systemic change, or to
> curtail the liberty interests of criminal aliens
> pending proceedings.

The I.N.S. wishes to think that the Courts should not correct
their wrong by having the Courts intervene in the I.N.S.'s abuse
of power. Unfortunately, a wrong is a wrong, no matter how it is
viewed. When common sense is used, Judge's will overrule such
nonsense.

If any person commits a serious wrong that this country views as
breaking the law, and we have no such law to cover this wrong doing,
you can be assured that this country will make the necessary changes
to fix the problem. Hence, with this problem of the abusive power
by the I.N.S., this country will fix this problem also within time.

Futhermore, on page 7, line 15, again when such laws were enacted,
as any law, over time, and after seeing the effects and outcomes of
such laws, we change our laws to properly suit the needs and properly
handle the issues at hand.

As Congress has made laws and changed them to better suit or better
handle society and properly handle Constitutional issue, Congress will
eventually change the unconstitutional detention of § 1226(c), just
as the majority of District Judge's have recently ruled that the
mendatory detention of § 1226(c), is unconstitutional.

On page 8, line 1, the I.N.S. makes the reference that:

> The INS does not dispute that §1226(c) is subject
> to some level of substantive due process review.

The I.N.S. does not dispute the substantive due process, but
they do not give any aliens any due process rights, and in previous

15

parts of their "Response", specifically on page 6, line 1, states:

> IIRIA demands the detention of all criminal aliens
> from start to finish of the administrative removal
> process without  an individual assessment on
> dangerousness and flight risk,

The I.N.S. states in one section that it can give the alien

due process, but it also states that it must detain the alien in

other sections of their infromation.  How can an agency say that

one has no right to have any individualized assessment, and on the

same "Response", state that § 1226(c) is subject to some level of

substantive due process, and yet do not give them any rights with

relation to due process.

On page 8, line 5, which states:

> §1226(c) is constitutional so long as it is
> "rationally" related to a "legitimate" government
> interest.

Where does the I.N.S. use rationality which should have some

level of reason to their actions when they allow no one any relief,

from such mandatory detention.  The decisions by the I.N.S. should

have some amount of reason to their decisions, but in fact they

always use the same rhetoric reply that everyone is held under

mandatory detention, and all aliens are a flight risk and a threat

to society, without any reason, because as the I.N.S. states, there

should be no individualized assessment, according to the I.N.S.  So

how can the I.N.S. state that they use reason or rational in their

decisions.


### Opposition to Respondent's "Argument C"

On page 8, line 12, the "Response" states that:

> Courts are required to adhere to the prudent course
> of looking to the concrete facts to determine what
> right is at issue.

The petitioner could not agree more on this matter that the
courts should adhere to concrete facts, rather than relying on
what either party states in their claims, and should only rely
on the concrete facts as seen on the exhibits listed by the
petitioner, and the petitioner is trying only to relate to the
facts in the exhibits, unlike the I.N.S. with their quotes, and
misconstruing of facts.

On page 8, line 16, the "Response" states:

> an individual's rights to liberty pending criminal
> trial and pending removal proceedings are **not**
> comparable.  "A person arrested on a preliminary
> warrant [of deportation is <u>not</u> protected by the
> presumption of citizenship comparable to the
> presumption of innocence in a criminal case."

I.N.S. should not make such ridiculous comparisons of a pretrial
detainee and an alien pending removal proceedings, as such issues
should not be viewed in a vacuum.  I.N.S. is trying to compare
apples to oranges, because one can not say that presumption of
innocence is comparable in any sense with whether an alien is
with presumption of citizenship.  The I.N.S. should not be saying
whether an alien has presumption of citizenship, but rather the
presumption of whether an alien will be getting any relief, because
an alien does not have any presumption of innocence in an aliens
case, but the only question being asked in an aliens case is whether
or not that person is entitled to some type of relief.  In which
this case the petitioner is entitled to certain relief.

Futhermore, what gives I.N.S. the right to mislead and give
false pretenses of what Liberty should be for "presumption of
citizenship" ?   The I.N.S. should not try to even compare Liberty
interest and try and determine with length of time a person is

17

incarcerated, because Liberty should be based on the actual
Constitutional violation of whether an individual is restrained
and his Liberty is lost, and violated because of such restraint.
If ones Constitutional Rights is violated, the Government should
not try to view that person case and decide whether he has such
Constitutional Rights of a Citizen, but look at the fact that he
is being violated.  A wrong is a wrong, just as if a person commits
a crime, at no point should anyone have immunity because of any
type of status, and therefore rules should be rules, and not made
to misconstrue such rules.

On page 9, line 8, the "Response", states:

> Aliens (and courts) often confuse the question of
> what process is due with the question of whether a
> protectable liberty interest exists.

How can the I.N.S. say the "courts" confuse the question of what
process is due with the question of whether a protectable liberty
interest exists, when more likely than not, the "courts" are correct
and the I.N.S. is confused.  Obviously the I.N.S. wishes to be biased
in whether the "courts" are correct, and continue to deny that they
make mistakes, as the records show hundreds of times in the past.

On page 9, line 13, the "Response" states:

> As the Second, Fifth, and Seventh Circuit Courts
> have recognized, a deportable alien does not possess
> the same "liberty" as a citizen.

The I.N.S. only wishes to mention three circuits that support
such notions, but rather looking at what this circuit has stated,
which has ruled the opposite, and stated that aliens do have the
same rights to "liberty" as a citizen, and this is just another
piece of misleading information given by I.N.S., and this Honorable
Court should also consider the actual words in this statement on

page 9, line 13, because it states that it is concerning "deportable

aliens", and nothing to do with aliens who still have relief in

the manner of several avenues of court.  As the petitioner is an

alien, but his deportation is still under discretion of whether he

will be deported or be able to stay in the United States, therefore,

this statement does not even apply, and again just a twist of words

by the I.N.S., in trying to make any case  fit their needs, instead

of keeping a persons interest at hand, and protecting such foolishne

On page 9, line 20, the "Response" trys to give reasons why

an alien is not entitled to bail, by stating:

> The reason is two-fold:  (1) release on bond has
> always been a privilege and never a matter of right
> or entitlement and....

This statement is very true, but in fact all persons have a right

to have the opportunity to have a bail hearing, and whether they

receive such bail is the "privilege", but by matter of our

Constitutional Rights, all persons must have the opportunity for bai

On page 10, line 7, of the "Response" states:

> freedom is being infringed temporarily during his
> removal proceedings, he has not been unlawfully
> deprived of any "fundamental liberty interest" in
> constitutional sense.

This Honorable Court should look at the wording on this statement

and can easily see that infringed means violated and temporarily mea

only momentarily, which I.N.S. states they will only momentarily

violate an alien during his removal proceedings.  Again the petition

must ask why the I.N.S. feels that this "infringment" is not

indefinite, when no one knows how long a person can sit in prison

waiting for such momentarily violations to pass.  Life someday will

come to an end just as will the wait on I.N.S. to release an alien,

but is it fair and Constitutional to hold an alien for a period
of indefinite detention that can last 1, 2, or 3 years, and in
some cases recently seen at Snyder County Prison, where the
petitioner is housed by the I.N.S., certain individuals have
been profiled in local newspapers for being incarcerated for
periods up to 3½ years, after serving only 16 months, and cases
where an individual served 72 hours, has been housed by I.N.S.
for  almost 2 years, which sounds ridiculous, but is very true

### Opposition to Respondent's "Argument D"

On page 10, line 21, where the "Response" states:

> The legislative history reveals that there were
> several  legitimate purposes underlying §1226(c):
> (1) to prevent criminal aliens from absconding
> so they could be removed as required by law; (2)
> to protect public safety from the presence of
> potentially dangerous criminal aliens;

In the first part of this sentence the I.N.S. uses the term
that there **were** several legitimate purposes underlying § 1226(c),
does this mean there are no longer legitimate purposes with the
§ 1226(c) ?  It clearly states there **were** legitimate, as meaning
past tense, or this could be another mistake.  But the legitimate
purpose of § 1226(c) should be viewed in the past tense, because
it is no longer constitutional in any sense of the meaning no
matter how you define the meaning.

Also in part (1) which states that it is to prevent criminal
aliens from absconding, but the Courts as well as I.N.S., should
be making an individualized evaluation of the aliens risk of abscond-
ing, rather saying that this law allows the I.N.S. to keep all
aliens, and do it solely on the basis of past conduct where that

alien has already done his time for his crime.

Futher on in the section (2) it states it was enacted to protect public safety from the <u>presence</u> of <u>potentially dangerous</u> criminal aliens. The Courts should look at this matter and ask itself whether the fact that the U.S. Government and all the individual states have a wrong view, of this simple thing that handles such issues as needed for covering the "presence of potentially dangerous" aliens, which is called supervised release. According to I.N.S., the simple fact that an alien has committed a crime and has done his time for such a crime, allows them to hold an alien, which everyone knows this is double jeopardy, in all meanings of the phrase no matter how it is reviewed.

Unfortunately some aliens have committed crimes with enough bearr to warrant a prison term, but in no way does it mean that <u>all aliens</u> are "potentially dangerous", as the I.N.S. quotes. First of all, potentially dangerous means one that might, more than likely, be dangerous, but in the case of the petitioner, he is in no way or the sort that poses any type of threat to the community. As a matter of fact, his diliberate attempts to alienate any future wrong doing, is more than evident by his majority of telephone calls and mail contacts is only with his 83 year old Grandmother. Which should be considered, especially since the inetentions of ones future actions and what involvement that person will have with the community and his ties to the community, which his Grandmother has been a U.S. resident for almost 20 years, and a U.S. Citizen for 10 years. The petitioner's number one goal is to go home and take care of his Grnadmother, and those intentions can not possibly be viewed as dangerous.

On page 11, line 8, where the "Response" states:

> The statute seeks to prevent clearly deportable
> criminal aliens with no realistic hope of relief
> from removal....

I.N.S. trys to state that an alien that has no realistic hope
of relief should be detained according to § 1226(c), but it says
nothing in regards to whether an alien who does have, not any hope,
but should by matter of law get relief whether those aliens should
be detained, because clearly an alien who is going to be released
from I.N.S. detention should not be detained just because the
I.N.S. has the power to unconstitutionally hold an alien, and this
Honorable Court should not endorse any such abuse of power. It is
very easily understood that the petitioner commited his crime
before the 1996 law, and hence will be available for 212(c) waiver
with regards to retroactivity, and this Honorable Court can simply
understand that any issues with regards to retroactivity is
understandable because a person can not be held accountable for
new laws if it was not a law when he committed the crime, and in
this case he was not subject to being deported before 1996, and
his crime was committed in 1992 according to all the paperwork
this Honorable Court has access to obtain and evaluate such said
information.

On page 12, line 1, the "Response" states:

> A 1995 report of the Senate Governmental Affairs
> Committee observed that "[i]n New York, for example
> in fiscal year 1993,... <u>87.7 percent failed to
> surrender</u>. ...$2.4 million in bonds breached in
> fiscal year of 1993."

This is a real dandy, the I.N.S. wishes to really misconstrue
these facts. The I.N.S. took one particular time frame, and one
particular city in the United States, which is probably and logically

the city with the most aliens present, New York City, and states
that 87.7 percent absconded from self surrender.  For the stats
to be so high there must have been some other circumstances, and
regardless, the petitioner was not one of those people among the
87.7 percent.  How would someone from I.N.S. liked to go through
a state that imprisoned people for 1 year fro getting a speeding
ticket because that area of people were speeding so much a law
had to be pasted to stop people from being killed, and it was
geared towards local people who were speeding, and the person was
not from that area.  This scenario would be a grave injustice to
all just as it is for I.N.S. to say since 87.7 percent absconded,
in one specific time frame, and one specific city, then all other
aliens in all other cities should be held accountable for the
actions be those 87.7 percent that absconded.

Reason and logic can only lead to the assumption and common
sense that this country has never seen such a high rate of abscondme
across the board.  It would literally be impossible, and the
petitioner even questions the validity of the statement itself
that 87.7 percent absconded, because logic says this is unrealistic
to have such figures, and again regardless, it was not the petitione
whom was among the 87.7 percent to be part of such an evaluation.

On page 12, line 18, of the "Response" states:

> that a rational relationship exists between the
> "aggravated felon" classification and danger to
> the community and risk of flight.

This is just another absurd "rational" evaluation among the
I.N.S., because where does I.N.S. get such assumptions, especially
since the recent classifications of "aggravated felonys" by the
I.N.S.   The I.N.S. makes certain crimes an "aggravated felon",

that are clearly not what most people in society would call an "aggravated felon", because look at what the I.N.S. is calling an "aggravated felon", everything from giving false information at an airport to employing a illegal alien that was not of knowledge to the alien employing the illegal alien, and then it is turned around that the alien employing such illegal alien, would be considered as having committed an "aggravated felon", and in no sense of what this country would want as a definition, should these "crimes" be considered an "aggravated felon. The I.N.S. has even held someone for almost 2 years for jumping a turn stile in NYC, and that person has been incarcerated for 2 years, for not paying a $1.50 subway toll. How can this society view such things as "aggravated felons", it clearly does not, just as when the petitioner commited his crime, the law stated that it was not an "aggravated felony" unless it involved a monetary amount of over $100,000.00, not over $10,000.00 as the law currently is placed. Again the charge for the petitioner was Conspiracy, 18 U.S.C. § 371, not 18 U.S.C. § 1956, which the I.N.S. keeps saying money laundering, which is not the case. If the I.N.S. can show the courts where he has been convicted of 18 U.S.C. § 1956, then he will accept the charge, but not when they keep making up things as they go along to only futher unconstitutionally detain a person.

Futhermore, there is no rational evaluation by anyone that certain "aggravated felons" are anyway related to the threat to the community, because there has never been violence in the petitioners history, which is what everything is based upon, and since the petitioner has no history of such violence, where can

anyone say that a threat to community is posed when the petitioner
is not posing such a threat to anyone ever, nor has he been
convicted of an "aggravated felon", according to the laws in
place in 1992.  But regardless of his classification, at some
point  a person of authority has to use some "rational" evaluation
in determining whether a persons crime is really aggravated or
just a moral turpitude, as it was classified during the laws of
1992, not an "aggravated felon", but simply a moral turpitude.

On page 13, line 12, the "Response" states:

> the Seventh Circuit correctly observed, criminal
> aliens covered by §1226(c) do not have any
> constitutional "right" or "liberty interest" in
> avoiding detention pending removal proceedings,
> because, by virtue of their criminal conduct and
> convictions, they have "forfeited any legal
> entitlement to remain in the United States."

The Seventh Circuit made a determination that an alien of his
situation, _Parra_, should not be afforded the same liberty interest
as others, which was an individual assessment of _Parra_, which
is what should be afforded to aliens, and individualized assessment
of their situation, not use a blanket evaluation for all aliens,
because we can not put a child from First grade in prison for
spitting gum, no we have laws, and rules that distinguish moral
tupitudes from "aggravated felons", just as it should be done in
the case of the petitioner.

The Courts should stop entertaining the excuses by I.N.S. and
continue making decisions as in recent cases where the Courts have
been ruling that it is unconstitutional, especially in the Third
Circuit, has been viewing such detention as unconstitutional as
will be argued in the petitioners argument section with regards to
his unconstitutional detention.

25

### Question #1 Presented

Is the petitioner's intentionally prolonged incarceration, by the I.N.S., a deprivation of due process in violation of the United States Constitution ?

The answer is definitely an erronious Constitutional Violation that the petitioner is being violated by the I.N.S.

### Argument #1 Presented

In the information supplied by the I.N.S. to the Assistant U.S. Attorney, Kate L. Mershimer, the information contained statements  and case law that the § 1226(c)'s mandatory detention is constitutional.  But in fact the only information is from the Seventh Circuit, and the I.N.S. fails to discuss the true outcome of the rulings in the Middle District of Pennsylvania, because in fact the Middle District of Pennsylvania, and more importantly the Chief Judge Vanaskie has ruled and stated that the mandatory detention implied by § 1226(c) is unconstitutional.

Futhermore, the I.N.S. only wishes to state the areas of interest, and the rulings that best help their fight of this ridiculous mandatory detention, and neglects to supply any usefull information that has had rulings that state the § 1226(c) is unconstitutional.

If the I.N.S. wishes to change the simple priniciples entrusted by the founding Fathers of this Country whom were all immigrants at some time or another, by misconstruing and misleading this Honorable Court with false pretenses it should be ruled as such.

The mandatory detention is clearly unconstitutional and will be argued as such.

## Constitutionality of § 1226(c)

Section 1226(c) provides, in relevant part:

> The attorney General shall take into custody any alien who....is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii),(B),(C),or (D) of this title....when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense....

Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Section 1226(c) thus allows or, arguably, requires the I.N.S. to hold the petitioner, Carlos Perez, without bond during his removal proceedings. Perez contends that the invocation of 8 U.S.C. § 1226(c) to deny him a bail hearing violates his right to procedural and substantive due process.[1]

The due process clause of the Fifth Amendment provides that "[n]o person shall....be deprived of life, liberty, or property, without due process of law." U.S. Constitutional Amendment V. Even an excludable alien is a "person" for purposes of the Fifth Amendment and is therefore entitled to due process. See **Chi Thon Ngo v. I.N.S.**, 192 F.3d 390, 396 (3rd Cir. 1999) (citing **Wong Wing**

---

[1]    Although the only two circuit courts to have considered the constitutionality of § 1226(c) have upheld the statute, see Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999); Reno v. Richardson, 162 F.3d 1338, 1363 n.119 (11th Cir. 1998), vacated on other grounds, 119 S. Ct. 2016 (1999), a number of courts, including two in this circuit, have found it unconstitutional, see Koita v. Reno, 113 F.Supp. 2d 737 (M.D. Pa 2000); Bouayad v. Holmes, 74 F.Supp. 2d 471 (E.D.Pa. 1999), appeal dismissed, No. 00-1111 (3d Cir. filed Oct.23, 2000); see also Welch v. Reno, 101 F.Supp. 2d 347 (D. Md. 2000); Chukwuezi v. Reno, NO. CIV. A. 3:CV-99-2020, 2000 WL 1372883 (M.D.Pa. May 16, 2000).

**v. United States**, 163 U.S. 228, 238 (1896) ("[A]ll persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth Amendments], and....even aliens shall not be...be deprived of life, liberty, or property without due process of law."); **see also Reno v. Flores**, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in any deportation proceedings."); **Ma v. Reno**, 208 F.3d 815, 825 (9th Cir. 2000) ("[N]umerous cases establish that once an alien has 'entered' U.S. territory, legally or illegally, he or she has constitutional rights, including Fifth Amendment Rights."), **cert. granted,**--- S.Ct.---, 2000 WL 949125, 69 USLW 3086 (U.S. Oct. 10, 2000).

Although courts have split over the question of whether indefinitely foreclosing any possibility of release during the removal proceeding violates an alien's right to due process of law, this Court adopts the reasonings so well expressed by Judge Katz in **Bouayad v. Holmes**, 74 F.Supp. 2d 471, 474-76 (E.D.Pa. 1999), **appeal dismissed**, No. 00-1111 (3rd Cir. filed Oct. 23, 2000), and finds that mandatory detention provisions of § 1226(c) to be unconstitutional. **See also Koita v. Reno**, 113 F.Supp. 2d 737, 741 (M.D.Pa. 2000).[2]

---

[2] As noted supra note 1, numerous courts have concluded that § 1226(c) implicates fundamental liberty interests, and that detaining an alien indefinitely without affording him or her any opportunity to challenge the necessity of detention is unconstitutional. See,e.g. Son Vo V. Greene, 109 F.Supp. 2d 1281 (D. Colo. 2000); Welch v. Reno, 101 F.Supp. 2d 347 (D. Md. 2000); Bouayad v. Holmes, 74 F.Supp. 2d 471 (E.D.Pa. 1999); Rogowski v. Reno, 94 F.Supp. 2d 177 (D.Conn. 1999); Danh v. Demore, 59 F.Supp. 2d 994 (N.D. Cal. 1999); Van Eeton v. Beebe, 49 F.Supp. 2d 1186 (D.Or. 1999); Martinez v. Greene, 28 F.Supp. 2d 1 (D.Colo. 1998); Chamblin v. I.N.S., NO. 98-97-JD, 1999 WL 803970 (D.N.H. June 8, 1999).

Moreover, the reasoning of **Chi Thon Ngo v. I.N.S.**, 192 F.3d
390 (3rd Cir. 1999), inexorably leads to the conclusion reached
here.  In **Chi Thon Ngo**, the Third Circuit considered whether the
indetermininable detention of an alien subject to a final order of
exclusion pending his ultimate deportation violates the alien's
right to due process, and held that:

> excludable aliens with criminal records as specified in
> the Immigration Act may be detained for lengthy periods
> when removal is beyond the control of the I.N.S., <u>provide</u>
> <u>that</u> appropriate provisions for parole are available.
> When detention is prolonged, <u>special care must be exercis</u>
> <u>so that the confinement does not continue beyond the time</u>
> <u>when the original justifications for custody are no longe</u>
> <u>tenable</u>.  The fact that some aliens posed a risk of fligh
> in the past does <u>not</u> mean they will forever fall into tha
> catergory.  Similarly, presenting danger to the community
> at one point by committing crime does not place them
> forever beyond redemption.  Measures must be taken to
> assess the risk of flight and danger to the community
> <u>on a current basis</u>.  The stakes are high and we emphasize
> that grudging and perfunctory review is not enough to
> satisfy the due process right to liberty, even for aliens
> ..  The process due even to excludable aliens <u>requires</u> an
> opportunity for an evaluation of the individual's <u>current</u>
> <u>threat</u> to the community and his risk of flight.

<u>Id.</u> at 398 (footnote omitted, emphasis added).  If an alien who is
subject to a final removal order is constitutionally entitled to an
individualized assessment of risk of flight and danger to the
community on a current basis, then <u>a fortiori</u>, an alien who is not
yet subject to a final removal order must be accorded the same
opportunity.  **See Bouayad**, 74 F.Supp. 2d at 475.[3]

_____

[3]    In <u>Chi Thon Ngo</u>, the petitioner was subject to a final order
of removal, but remained detained in the U.S. indefinitely because
his native country, Vietnam, refused to accept him.  Just as the
petitioner will possibly be subjected to a final order, but has many
avenues to fight throughout the courts and will be detained.    Thus
although the facts of <u>Chi Thon Ngo</u> differ in some ways from those
presented here, both cases deal with indeterminable detention, and
the factual differences thus do not compel different results.

Respondent suggests that **Reno v. Flores**, 507 U.S. 292 (1993),
stands for the proposition that the indefinite detention of an
alien who has been convicted of an aggravated felony does not
implicate a fundamental liberty interest.  Contrary to Respondent's
suggestion, however, the Supreme Court has not addressed whether
deportable aliens have a fundamental liberty interest in being free
from indefinite detention.  In **Flores**, a class of minors challenged
an I.N.S. regulation that requires juvenile aliens to be placed in
institutional group care facilities during the pendency of deportation
proceedings if a guardian or adult relative is not available to
take custody.  The Court recognized that strict scrutiny applies
"when fundamental rights are involved," see id. at 302, 305, but
it rejected the minors' substantive due process claim becasue it
found that no fundamental right existed under the circumstances of
the case.  See id. at 305.  The Court characterized the interest at
stake as "the alleged interest in being released into the custody
of strangers."  Id. at 305.

Moreover, the Third Circuit has held that "[e]ven an excludable
alien is a 'person' for purposes of the Fifth Amendment and is thus
entitled to substantive due process."  **Chi Thon Ngo v. I.N.S.**, 192
**F.3d 390, 396 (3rd Cir. 1999)**.  Although the **Chi Thon Ngo** court
expressly limited its holding to excludable aliens and expressed
no view on situations involving deportable, or non-aggravated felons,
see id. at 398 n.7, there is no reason why an excludable alien
would be entitled to greater protection than a non-aggravated felon or
deportable  alien: "Once an alien gains admission to our country
and begins to develop the ties that go with permanent residence,
his constitutional status changes accordingly."  **Landon v. Plasencia**

459 U.S. 21, 32 (1982).   "In fact, several recent district courts
have found, in detention contexts, that deportable aliens are entitl
to <u>greater</u> substantive due process than ecludable aliens." <u>Kay v.</u>
<u>Reno</u>, 94 F.Supp. 2d 546, 553 (M.D.Pa. 2000)(emphasis added)(citing
cases).   Consequently, the court rejects Respondent's suggestion tha
the indefinite detention of Perez does not implicate fundamental
liberty interests.  <u>Cf.</u> <u>Welch v. Reno</u>, 101 F.Supp. 2d 347, 353-34
(D.Md. 2000) ("This court joins those that have rejected the
application of <u>Flores</u> to section [1226(c)]." (citing <u>Van Eeton v.</u>
<u>Beebe</u>, 49 F.Supp. 2d 1186, 1189 (D.Or. 1999); <u>Danh v. Demore</u>, 59 F.
Supp. 2d 994, 1003 (N.D. Cal. 1999); <u>Martinez v. Greene</u>, 28 F.Supp.
2d 1275, 1281 (D.Colo. 1998)).

Although Perez does not have an absolute right, yet, to remain at
liberty while the proceedings continue, due process requires a
current individualized evaluation to determine whether his continued
indefinite detention is necessary to prevent a risk of flight or a
threat to the community, and this determination should be made by
this Honorable Court, rather than rely on the ineffectiveness of
the I.N.S.[5]

---

[5] "While the risk of flight by aliens may be significant, the
public can still be protected by a careful evaluation of an individua
alien's case, which should result in the detention of those who are
likely to flee." <u>Bouayad v. Holmes</u>, 74 F.Supp. 2d 471, 475 (E.D. Pa.
1999).   "To <u>presume</u> dangerousness to the community and risk of fligh
based solely on his past record does not satisfy due process." <u>Chi</u>
<u>Thon Ngo v. I.N.S.</u>, 192 F.3d 390, 398-99 (3rd Cir. 1999).   It has eve
been shown in all the petitioners records that their has never been
any violence or any type of threats in his case, nor has the
petitioner ever posed any type of flight risk.
With the petitioner's question of whether he has been convicted
of an aggravated felony, the courts view cases with more dicretion
than most other cases.

## Conclusion

For the foregoing reasons, the petitioner prays this Honorable Court will grant the petition for the writ of habeas corpus, and the petitioner prays for this Honorable Court to consider the matter of bail, to be heard in this Honorable Court, and settle the unconstitutional mandatory detention of the I.N.S.

Dated April 4, 2001.

Respectfully submitted,

Carlos A. Perez
Snyder County Prison
600 Old Colony Road
Selinsgrove, Pa  17870

**Certificate of Service**

   On this 4th day of April 2001, a copy of this Response was
mailed to;  U.S. District Court, Clerk of Courts, 228 Walnut Street,
Harrisburg, Pa  17108;  U.S. Attorney's Office, 228 Walnut Street,
Harrisburg, Pa  17108.

# Table of Contents

Caption ............................................. 2

Opening Statement ................................... 2

Statement of the Case ............................... 4

Opposition to Respondent's "Statement of the Case .... 6

Opposition to Respondent's "Question and Argument" ... 9

Opposition to Respondent's "Argument A" ............. 11

Opposition to Respondent's "Argument B" ............. 12

Opposition to Respondent's "Argument C" ............. 16

Opposition to Respondent's "Argument D" ............. 20

Petitioner's Questions Presented .................... 26

Petitioner's Arguments Presented .................... 26

Conclusion .......................................... 32

Exhibits ............................................ 34