(11)
4-10-01
SC



FILED
APR 0 9 2001
PER SC
HARRISBURG, PA.    DEPUTY CLERK

AO 245B (Rev. 8/96) Sheet 1 - Judgment in a Criminal Case

FILED
JUN 24 1997
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
[NORTHERN] DISTRICT OF CALIFORNIA

# United States District Court
## Northern District of California

UNITED STATES OF AMERICA
v.
Carlos Alberto Perez

JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)
Case Number: 3:92CR00403-009

Michael Murray
Defendant's Attorney

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____
☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
☒ was found guilty on count(s) 2 of the third superseding indictment after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Launder Money | 07/29/92 | 2 |

ENTERED IN CRIMINAL DOCKET 6/25/97

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By _____ Deputy Clerk
Date _____

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s) all remaining are dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.: 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 | 06/09/1997 — Date of Imposition of Judgment |
| Defendant's Date of Birth: 04/05/1966 | |
| Defendant's USM No.: 38618-054 | Signature of Judicial Officer |
| Defendant's Residence Address: custody of US Marshal | Thelton E. Henderson, Chief Judge |
| Defendant's Mailing Address: custody of US Marshal | |
| Pleasanton CA | Date 6/17/97 |

I hereby certify that the annexed instrument is a true and correct [copy] of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By _____ Deputy Clerk
Date 3-5-99

Document No. 2101R
District Court
Criminal Case Processing

Exhibit B

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS A. PEREZ,
:
    Petitioner
:    No. 1:CV-00-1960
:
v.
:    (Judge Kane)
:
JOHN ASHCROFT,[1]
:
    Respondent
:

<u>RESPONSE TO HABEAS CORPUS PETITION</u>

    This is a habeas petition brought under 28 U.S.C. §2241 by Carlos A. Perez, a citizen of Columbia. Perez has been charged by the INS as being removable for having committed an aggravated felony (money laundering), which Perez has conceded. Perez's only claim, which is on appeal to the Board of Immigration Appeals ("BIA") is whether he should be deported to Columbia or to another country under the Convention Against Torture ("CAT"). Pending a decision by the BIA, which should occur any day, Perez is being detained as required by law, 8 U.S.C. §1226(c).

    Perez challenges his detention pending the BIA's decision as being unconstitutional. In that deportation is a plenary power exercised by Congress and the executive branch, detention is part of the deportation process, detention rationally furthers a number of legitimate government interests, and an alien's detention during removal proceedings is not indefinite, the INS maintains that the

---

[1] at the time Perez filed his habeas petition, Perez named then-Attorney General Janet Reno as respondent. Pursuant to Fed. R. Civ. P. 25(d)(1), the current Attorney General, John Ashcroft, has been substituted for Janet Reno.

mandatory detention provisions of 8 U.S.C. §1226(c) governing criminal aliens is constitutional.

### Statement of the Case

Petitioner is a citizen of Columbia who had previously entered the United States as an immigrant. In 1992, Perez was indicted in the United States District Court for the Northern District of California. In 1997, Perez was convicted of a felony, conspiracy to launder money, and was sentenced to 60 months imprisonment. Exhs. 1-2.

In October 1999, the INS initiated removal proceedings against Perez, charging him with being removable for having been convicted of an aggravated felony. Exh. 2; Exh. 3, at 2.

In May 2000, Perez admitted to the factual allegations, with the immigration judge concluding that the money laundering offense constituted an aggravated felony and made Perez removable. Exh. 3, at 2-3. Pursuant to 8 U.S.C. §208.13, Perez sought deferral of removal to Columbia under the CAT, claiming that he would be tortured if removed to Columbia. Id., at 3-5.

On August 2, 2000, the immigration judge denied Perez's CAT claim, concluding that Perez had "in no way" demonstrated that he likely would be tortured by Columbia officials. Indeed, the immigration judge concluded that Perez was as likely, if not more likely, to be injured if he stayed in the United States due to his various criminal activities. Exh. 3, at 6-9.

2

Perez has appealed this decision to the BIA with a decision expected any day. In the interim, the INS is detaining Perez pursuant to Congress' direction that criminal aliens be detained pending removal proceedings. 8 U.S.C. §1226(c).

### Question Presented

In that deportation is a plenary power exercised by Congress and the executive branch, the Supreme Court has held that detention is part of the deportation process, detention of aliens rationally furthers a number of legitimate government interests, and an alien's detention during removal proceedings is not indefinite, is the mandatory detention provisions of 8 U.S.C. §1226(c) governing criminal aliens constitutional?

### Argument

IN THAT DEPORTATION IS A PLENARY POWER EXERCISED BY CONGRESS AND THE EXECUTIVE BRANCH, THE SUPREME COURT HAS HELD THAT DETENTION IS PART OF THE DEPORTATION PROCESS, DETENTION OF ALIENS RATIONALLY FURTHERS A NUMBER OF LEGITIMATE GOVERNMENT INTERESTS, AND AN ALIEN'S DETENTION DURING REMOVAL PROCEEDINGS IS NOT INDEFINITE, THE MANDATORY DETENTION PROVISIONS OF 8 U.S.C. §1226(C) GOVERNING CRIMINAL ALIENS ARE CONSTITUTIONAL.

The Seventh Circuit in <u>Parra v. Perryman</u>, 172 F.3d 954 (7th Cir. 1999), is the only appellate court to consider the constitutionality of mandatory detention pending proceedings for criminal aliens under section 236(c) of the INA, 8 U.S.C. §1226(c). In reviewing the governing law, the Seventh Circuit upheld the constitutionality of §1226(c), observing that an alien in the United States who had violated our country's criminal laws had "forfeited any legal entitlement to remain in the United States and had little hope of clemency." 172 F.3d at 958. <u>See also</u>

3

Richardson v. Reno, 162 F.3d 1338, 1364 n.119 (11th Cir. 1998), *vacated on other grounds*, 119 S. Ct. 2016 (1999)("Congress acts well within its plenary power in mandating detention of a criminal alien with an aggravated felony conviction facing removal proceedings, ... [with this posing] no constitutional issue").

The Third Circuit Court of Appeals has not addressed the issue yet. However, district courts in the Middle District of Pennsylvania and elsewhere in the United States have issued rulings disagreeing on the constitutionality of mandatory detention during the removal process. Compare Lezcano v. Reno, 2000 WL 1175564 (N.D. Ca. Aug. 4, 2000)(attached)(upholding constitutionality of §1226(c); Kahn v. Perryman, 2000 WL 1053962 (N.D. Ill. July 31, 2000)(attached); Avramenkov v. INS, 99 F.Supp.2d 210, 215-19 (D.Conn. 2000); Okeke v. Pasquarell, 80 F.Supp.2d 635, 637-38 (W.D. Tex. Jan. 11, 1999); Reyes v. Underdown, 73 F.Supp.2d 653, 657-58 (W.D. La. Nov. 3, 1999); Sierra-Tapia v. Reno, 1999 WL 803898 (S.D. Cal. Sept. 30, 1999)(attached); Alikhani v. Fasano, 70 F.Supp.2d 1124 (S.D. Cal. July 19, 1999); Hinojosa-Perez v. Eddy, 55 F.SUPP.2d 1001 (D. Alaska 1999); Edwards v. Blackman, 48 F.Supp.2d 477, 480 (M.D. Pa. 1999)(McClure, J.), *vacated on other grounds*; Galvez v. Lewis, 56 F. Supp.2d 637 (E.D. Va. 1999); Diaz-Zaldierna v. Fasano, 43 F. Supp. 2d 1114 (S.D. Cal. 1999) with Koita v. Reno, 113 F.SUPP.2d 737 (M.D.Pa. 2000)(Caldwell, J.); Chukwuezi v. Reno, 2000 WL 1372883 (May 16, 2000 M.D.Pa.)(Vanaskie, C.J.)(attached).

4

As explained below, the better holding is that the provisions of 8 U.S.C. §1226(c), clearly are constitutional and fall well within Congress' plenary powers in governing immigration.

A. The Purpose of Mandatory Detention

Mandatory detention cannot be viewed in a vacuum. Rather, detaining criminal aliens is part of a removal process, not an end result. Section 1226(c) is but one of several pieces of legislation collectively designed to accelerate the removal process for criminal aliens.

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) to establish a framework to effect a net increase in removal orders entered against criminal aliens. Through IIRIRA's provisions, Congress not only mandated the detention of criminals pending removal proceedings, but also took away the Attorney General's discretionary authority to forgo the removal of aggravated felons, eliminated judicial review, and set a 90-day time limit by way of instruction to INS for physical removal after a final order is entered. See 8 U.S.C. §§1101(f)(3) and (8), 1158(b)(2)(B), 1226(c) and (e), 1229b(a)(3), (b)(1)(B), (C), (2)(C), (D), 1229c(a)(1), 1231(a), (b)(1)(A), (C), 1231(a)(2), 1252(a)(2)(C).

In enacting these provisions, Congress implicitly recognized that the curtailment of individual liberty interests was necessary to effect a net increase in removal orders against

5

criminal aliens. That is, while the IIRIRA demands the detention of all criminal aliens from start to finish of the administrative removal process without an individual assessment on dangerousness and flight risk, it does so based on the theory that such limitation is necessary to ensure a more effective and credible removal process generally. See H.R. Rep. No. 104-469(I) (1996), available in 1996 WL 168955; 142 Cong. Rec. S3329, 1996 WL 174902 (daily ed. Apr. 15, 1996)(statement of Sen. Abraham)("These provisions collectively will allow us to dramatically increase the number of criminal aliens who are deported." (emphasis added).

2. The Plenary Power Doctrine for All Immigration Matters

The principle of judicial deference to legislative choices is magnified in the immigration context. See Fiallo v. Bell, 430 U.S. 787, 792 (1977). Fiallo's deferential approach to questions of immigration and nationality is tied to Congress' constitutional authority and inherent sovereign powers. Because the responsibility for formulating immigration policies is "exclusively entrusted to the political branches of government," such policy choices are "largely immune from judicial inquiry or interference." Harisiades v. Shaughnessy, 342 U.S. 580, 588-589 (1952).

This basis for judicial caution applies with equal force in the immigration detention context. **The power to detain is part and parcel of the power to remove**; otherwise, "[p]roceedings to

6

exclude or expel would be vain." <u>Wong Wing v. United States</u>, 163 U.S. 228, 234 (1896). <u>See also</u> <u>Carlson v. Landon</u>, 342 U.S. 524, 538 (1952)("Detention is necessarily a part of this deportation procedure. Otherwise, aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings.").

Without doubt, it is decidedly the province of the legislature to weigh and balance the costs of the immigration detention policy with the enforcement interests and the alien's liberty interests. The plenary power doctrine constrains judicial inquiry into Congress' balancing of individual and government interests, and the courts must accord great deference to Congress' determination of what process is due. <u>See</u> <u>Weiss v. United States</u>, 510 U.S. 163, 176-77 (1994).

This is a critical aspect of the plenary power doctrine. The courts should not revisit the wisdom of either Congress' desire to effect a systemic change, or to curtail the liberty interests of criminal aliens pending proceedings. The very fact that Congress enacted the statute demonstrates that it concluded that other policy concerns outweighed those concerns articulated by the critics.

7

The INS does not dispute that §1226(c) is subject to some level of substantive due process review.[2] See Fiallo v. Bell, 430 U.S. 787, 793 n.5 (1977). Because of the "plenary powers" doctrine, however, the proper standard of review here is a deferential rational-relation standard, under which §1226(c) is constitutional so long as it is "rationally" related to a "legitimate" government interest. See Reno, 507 U.S. at 300-01; see Carlson v. Landon, 342 U.S. 524, 540-41 (1952)(upholding INS detention that was not clearly "without reasonable foundation").

C. The Individual's Right To Liberty

The characterization of the liberty interest at stake is another important aspect of the detention litigation. Courts are required to adhere to the prudent course of looking to the concrete facts of a case to determine what right is at issue. See Washington v. Glucksberg, 521 U.S. 702, 722-24 (1997).

Moreover, we emphasize that an individual's rights to liberty pending criminal trial and pending removal proceedings are not comparable. "A person arrested on a preliminary warrant [of

---

[2] In §1226(c) cases, the administrative agency has the jurisdiction, pursuant to 8 C.F.R. §3.19(h)(2)(ii), to determine whether the alien in custody actually falls within a category of criminal aliens subject to interlocutory detention pending removal proceedings. See Matter of Joseph, Int. Dec. 3398, 1999 WL 339053 (BIA 1999). If the alien does fall within the interlocutory detention provision, then there is no authority to entertain a request for release on bond (unless the alien is eligible for Witness Protection Program benefits). Id.

8

deportation] is <u>not</u> protected by the presumption of citizenship comparable to the presumption of innocence in a criminal case." INS v. Lopez-Mendoza, 468 U.S. 1032, 1043 (1984). The absence of a presumption of innocence affects the constitutionality of immigration detention because the motivating concern for limiting the length of pretrial detention in a criminal case is that presumption of innocence.

Aliens (and courts) often confuse the question of what process is due with the question of whether a protectable liberty interest exists. The interest of the alien at stake in §1226(c) cases is a non-fundamental interest in being released pending proceedings, not in an individualized hearing on the question of whether he will be released. As the Second, Fifth, and Seventh Circuit Courts have recognized, a deportable alien does not possess the same "liberty" as a citizen. See Zadvydas v. Underdown, 185 F.3d 279, 289 5th Cir. 1999), *cert. granted*, 121 S.Ct. 279 (Oct. 10, 2000);[3] Parra, 172 F.3d at 958; Doherty v. Thornburgh, 943 F.2d 204, 209-10 (2nd Cir. 1991). In a certain sense, deportable criminal aliens in removal proceedings possess no "right to come and go at will." See Flores, 507 U.S. at 302. The reason is two-

---

[3] As just noted, the Supreme Court has granted certioari in Zadvydas, with a decision addressing the scope of Congress' detention powers to be released within the next two months. Although this case addresses post-order of removal detention cases, its holding is likely to be quite relevant in the pre-order of removal detention cases.

9

fold: (1) release on bond has always been a privilege and never a matter of right or entitlement and (2) aliens are subject to the will of Congress when it comes to matters associated with their continued presence within our society. See Flores, 507 U.S. at 305-06; Harisiades, 342 U.S. at 586-87.

Consequently, although a criminal alien's physical freedom is being infringed temporarily during his removal proceedings, he has not been unlawfully deprived of any "fundamental liberty interest" in the constitutional sense. See Parra, 172 F.3d at 958; see also Flores, 507 U.S. at 306, Carlson, 342 U.S. at 537, 540-41; Doherty, 943 F.2d at 208-11. As the Seventh Circuit explained, the private interest implicated by §1226(c)'s detention requirement "is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." Parra, 172 F.3d at 958. Because §1226(c) does not implicate a fundamental right, the scope of review is rational basis review. See Flores, 507 U.S. at 306.

D.  **Section 1226(c) is Constitutional**

Section 1226(c) is a reasonable exercise of congressional power as it clearly furthers a legitimate governmental purpose. The legislative history reveals that there were several legitimate purposes underlying §1226(c): (1) to prevent criminal aliens from absconding so they could be removed as required by law; (2) to protect public safety from the presence of potentially dangerous

10

criminal aliens; (3) to correct the failure of prior bond proceedings where criminal aliens absconded, and (4) to repair the serious damage to the American immigration system caused by the Government's inability to detain criminal aliens pending deportation and to remove them promptly. See S. Rep. No. 48, 104th Cong., 1st Sess. (1995)(1995 WL 170285)(Leg. Hist.) at 1-6, 9, 18-23).

The statute seeks to prevent clearly deportable criminal aliens with no realistic hope of relief from removal from absconding or committing further criminal acts during proceedings to effect their removal.[4] Preventing danger to the community and flight have long been considered legitimate regulatory goals. See, e.g., Salerno, 481 U.S. at 748-49; Schall v. Martin, 467 U.S. 253, 251 (1984); Bell v. Wolfish, 441 U.S. 520 (1979); Carlson, 342 U.S. at 534. These goals have been paramount among the immigration enforcement concerns of Congress and the Attorney General over the past decade, with mounting emphasis in the past three years as the problems of widespread recidivism and abscondment have come increasingly to light.

---

[4] Under the Immigration and Naturalization Act, as amended by AEDPA and then IIRIRA, criminal aliens like petitioner - convicted of an aggravated felony (money laundering) - must be removed from the United States. Such aliens have no right to discretionary relief from deportation. Avrammenkov v. Immigration and Naturalization Service, 99 F.Supp.2d at 211-12. Thus, particularly as in petitioner's case, the alien has no hope in remaining in the United States.

11

A 1995 report of the Senate Governmental Affairs Committee observed that "[i]n New York, for example, in fiscal year 1993, out of 1695 [orders to surrender for deportation] sent to criminal and non-criminal aliens, 1486, or 87.7 percent failed to surrender. Also, in New York, there were $2.4 million in bonds breached in fiscal year 1993."). S. Rep. No. 104-48, 1995 WL 170285 (Apr. 7, 1995) (emphasis added); see also id. ("Through 1992, nearly 11,000 criminal aliens convicted of aggravated felonies (which are particularly serious crimes) failed to appear for deportation hearings. . . .") (emphasis added).

There can be no question that removing deportable criminal aliens from the United States, and preventing them from absconding or committing further crimes in the process, are legitimate and reasonable goals. See, e.g., Salerno, 481 U.S. at 747; Bell v. Wolfish, 441 U.S. 520. Nor is there any doubt, in light of the disturbing rates of abscondment and recidivism discussed above, that the detention requirement rationally advances these objectives, or that a rational relationship exists between the "aggravated felon" classification and danger to the community and flight risk. Hence, §1226(c)(2) rests on a legitimate basis, and petitioner's substantive due process challenge must fail. See Flores, 507 U.S. at 306; Fiallo, 430 U.S. at 794-95; Avramenkov v. Immigration and Naturalization Service, 99 F.Supp.2d at 215-18.

Section 1226(c) also does not violate petitioner's procedural due process rights. In assessing the legitimacy of any procedural due process claim, great judicial deference should be given to Congress' determination of what process is due. See Weiss, 510 U.S. at 176-77. The due process analysis set out in Mathews v. Eldridge, 424 U.S. 319, (1976), requires the court "to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, **with a thumb on the scale in favor of the statute's constitutionality.**" Parra, 172 F.3d at 957 (emphasis added).

As the Seventh Circuit correctly observed, criminal aliens covered by §1226(c) do not have any constitutional "right" or "liberty interest" in avoiding detention pending removal proceedings, because, by virtue of their criminal conduct and convictions, they have "forfeited any legal entitlement to remain in the United States." See Parra, 172 F.3d at 958. Consequently, "[t]he private interest here is not liberty in the abstract, but [merely] liberty in the United States by someone who is no longer entitled to remain in this country." Id.

The Parra court's reasoning applies in this case. Because petitioner is properly in the INS' jurisdiction and does not dispute the material facts underlying the criminal removal charges, the Court should significantly reduce the weight accorded

13

his private interests in evaluating the due process claim. Parra, 172 F.3d at 958.

Moreover, on the weight of the Government's interest, the Court may not substitute its judgment for the informed decisions of Congress. Cf. Weiss, 510 U.S. at 176-77. Parra's reasoning is legally sound:

> The Supreme Court held in United States v. Salerno, 481 U.S. 739 (1987), that pretrial detention in criminal prosecutions (a parallel to pre-removal detention) comports with the Constitution even though the private interest is greater, the likelihood of error must be deemed significant given the prosecutor's high burden at a criminal trial, and the public interest is less (for the skip rate on bond in criminal prosecutions is well under 90%). Given the sweeping powers Congress possesses to prescribe the treatment of aliens, see Fiallo v. Bell, 430 U.S. 787, 792 (1977), the constitutionality of §1226(c) is ordained.

Parra, 172 F.3d at 958. For these reasons, the Court should conclude that §1226(c) does not violate petitioner's procedural due process rights.

As one court recently recognized, petitioner is almost certainly going to be removed as an aggravated felon such that he has no significant liberty interest implicated by §1226(c). The United States, on the other hand, has a substantial interest in avoiding individualized bond hearings for individuals Congress has already determined pose a significant risk of flight and/or threat to the community. As such, there is no procedural due process violation. Avramenkov v. Immigration and Naturalization Service,

14

99 F.Supp.2d at 215-16 (citing Eldridge, 424 U.S. at 334-36). See also text supra at 3-4 (collecting cases).[5]

### Conclusion

For the above-stated reasons, petitioner's detention pursuant to 8 U.S.C. §1226(c) is constitutional and the habeas petition should be denied.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

KATE L. MERSHIMER
Assistant United States Attorney
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108-1754
717/221-4482

Date: March 26, 2001

---

[5] We also note that petitioner's detention is not indefinite in the least. The removal process does not take long -- with the BIA's decision in this case expected any day.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS A. PEREZ,　　　　　　　　　　　:
　　　　　Petitioner　　　　　　　　　:　　No. 1:CV-00-1960
　　　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　　　　:　　(Judge Kane)
　　　　　　　　　　　　　　　　　　　:
JOHN ASHCROFT,　　　　　　　　　　　　:
　　　　　Respondent　　　　　　　　　:

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 26th day of March, 2001, she served a copy of the attached

**RESPONSE TO HABEAS CORPUS PETITION**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

Carlos A. Perez
A31-221-000
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　KATE L. MERSHIMER
　　　　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney